**In re Theodore J. LYONS, Jr. and Karolyn F. Lyons, Debtors.**

**Theodore J. LYONS, Jr. and Karolyn F. Lyons, Plaintiffs,**

v.

**FIRST PENNSYLVANIA BANK, Defendant.**

**Bankruptcy No. 84 B 1459. Adv. No. 84 A 579.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 15, 1985.

Daniel G. Loftus, Chicago, Ill., for First Pennsylvania Bank.

Geoffrey C. Miller, Matteson, Ill., for debtor.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

At issue in this matter is whether a debtor in a Chapter 7 bankruptcy proceeding may use subsections 506(a) and (d) of the Bankruptcy Code to render part or all of the mortgages on his principal residence an unsecured claim. For reasons set forth in this memorandum, it is determined that the debtor herein may do so.

### FACTS

The debtors ("the Lyons") filed their petition under Chapter 7 of the Bankruptcy Code on February 7, 1984. Listed on the Lyons' schedules was a parcel of real estate located in Richton Park, Illinois, which is the debtors' residence. As of the date of filing the petition, the debtor owed $42,533.35 to the first mortgage holder. A second mortgage on the property is held by First Pennsylvania Bank ("the Bank"). That mortgage is scheduled in the amount of $24,359.92 and was procured for purposes of home improvement. The Lyons filed with this court an Application to De-

termine Secured Status. No purpose for that filing has been offered. For the purpose of this dispute, The Lyons stipulated the value of the property at $50,000. However, no evidence of value has been presented to the court. They have asserted that to the extent the second mortgage exceeds the value of the property, whatever that value might be, the Bank holds an unsecured claim.

On September 18, 1984, this court entered an order which provided:

This cause coming on for hearing on Debtors' Complaint for Determination of Secured Status of the debt due to FIRST PENNSYLVANIA BANK as second mortgageholders, due notice having been given and the Defendant having filed its Response; the Court being fully advised in the premises;

IT IS HEREBY ORDERED:

1) The excess of the obligation due to FIRST PENNSYLVANIA BANK over the current market value of Debtors' residence, after deducting the balance due to Crown Mortgage Company as first mortgageholders herein, shall and hereby is determined to be an unsecured obligation and as such is discharged;

2) Said amount shall be computed by deducting the first mortgage balance as of the date of the filing of the bankruptcy Petition herein from the current market value of the premises;

3) The remaining balance shall remain a secured obligation herein.

Because the above order was rather vague and did not clearly establish the Bank's rights, the Bank moved this court to enter an order which essentially modified the above order by granting the Bank leave to seek periodic redeterminations of the value of the property. The effect of such a provision would be to afford the Bank the effect of any postpetition appreciation in value of the property.

## DISCUSSION

The dispute presently *sub judice* is whether a second mortgage on real property may be valued and bifurcated pursuant to section 506 of the Bankruptcy Code, which provides in relevant part:

§ 506. Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

\*  \*  \*  \*  \*  \*

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506 (West 1984).

The courts are divided upon the issue of whether this section may be used to extinguish a lien on real property in a Chapter 7 case. The leading case on the point has been *In re Tanner,* 14 B.R. 933 (W.D.Pa. 1981) in which it was held that a Chapter 7 debtor can utilize the provisions of section 506 to avoid a lien on real property to the extent that the amount of the lien exceeds the value of the collateral. That opinion was a carefully reasoned one which this court and others have followed on numerous occasions. *See, e.g., Walker v. First Federal Savings & Loan,* 11 B.R. 43 (Bankr.N.D.Ill.1981); *In re Rappaport,* 19

B.R. 971 (Bankr.E.D.Pa.1982); *Brace v. State Farm Mutual Ins.,* 33 B.R. 91 (Bankr.S.D.Ohio 1983).

However two more recent pronouncements on this subject exist. *In re Cordes,* 37 B.R. 582 (Bankr.C.D.Calif.1984); *In re Mahaner,* 34 B.R. 308 (Bankr.W.D.N.Y. 1983). Those cases reach a conclusion opposite to the holding in *Tanner* and contain reasoning which is somewhat persuasive on policy grounds.

Finally, another Bankruptcy Court has recently considered this issue, contemplated *Mahaner* and *Cordes* and has chosen to follow *Tanner.* *In re Gibbs,* 44 B.R. 475 (Bankr.D.Minn.1984). Section 506 does appear to apply to liens on real property. *Tanner,* 14 B.R. at 939. This court agrees that the language of the section seems to so indicate, and can find nothing which directs a contrary conclusion. However, it is noted that Chapter 7 redemption proceedings are confined to personal property. *Mahaner,* 34 B.R. at 308; 11 U.S.C. § 722 (West 1984). Section 722 deals with the specifics of personal property redemption and a specific section is to be weighed over a more general one. *Id.* Arguably, the rationale for section 722 simply does not apply to real estate. Prior to the enactment of section 722, creditors held enormous pressure over debtors to reaffirm on security agreements for personal property. The reason for this pressure was that while the resale price i.e. market value of personal property is very low, the debtors' cost to purchase new property would be very high. The debtor would, under those circumstances be under tremendous pressure to reaffirm. Congress enacted section 722 to alleviate some of the pressure.

Also important, however, is the argument that Congress did not intend to permit Chapter 7 debtors a benefit which would not be permitted Chapter 13 debtors under the Code. A Chapter 13 debtor would frequently be precluded from avoiding a second mortgage upon his residence by section 1322(b)(2).* However, where the second mortgage is for a shorter term and for purposes other than purchasing the property, section 1322(b)(2) might not apply even in a Chapter 13 case. A loan for the purpose of home improvement is probably not the long term mortgage financing availability which Congress sought to protect in enacting section 1322(b)(2). Therefore, to permit the debtor under these facts to utilize section 506(a) and (d) would not give him an advantage which he could not attain under Chapter 13.

As pointed out by the court in *Mahaner,* 34 B.R. at 309, the construction adopted by the *Tanner* court might discourage use of the rehabilitative provisions of Chapter 13. This court finds that an interpretation which discourages the use of Chapter 13 even more inapt than it might once have been, given the increasing encouragement of debtors toward Chapter 13 found in the July 1984 amendments to the Code. Bankr.Rule 1002 (West 1984); H.Rep. No. 98–882, 130 Cong.Rec. H 7478 (June 29, 1984). Nevertheless, the better interpretation of the letter of the law, particularly section 506(d), appears to be that the section is intended to apply to real as well as personal property. The court will so construe the statute in the absence of a contrary mandate by Congress or the appellate courts.

This problem is a difficult one from a policy perspective because of the apparent divergence here between the law and one's sense of what is equitable. On the one hand, as other courts have noted, the relevant question is what the lienholders' interests would be outside bankruptcy. That is, what each lienholder would receive in a foreclosure should also be the worth of his lien in the bankruptcy setting. On the other hand, it seems manifestly unfair to permit a debtor to retain his house after

---

* Section 1322(b)(2) provides:
    (b) Subject to subsections (a) and (c) of this section, the plan may—
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; 11 U.S.C. § 1322(b)(2) (West 1984).

•

avoiding liens to the extent they exceed the value of the collateral. As of this time, however, that result seems to be the one which the Code compels.

For the above reasons, this court will follow *Tanner* and its progeny.

That leaves the problem of the September 18, 1984 order entered in this matter. The value of the subject real estate must be determined promptly to allow the mortgageholders to determine their rights in the property. Therefore, the parties are directed forthwith to submit to the court evidence of value. The court will then issue an order in accordance with this opinion which incorporates the current value of the property.