**In re Lamar DEWSNUP and Aletha Dewsnup, Debtors.**

**Lamar DEWSNUP and Aletha Dewsnup, Plaintiffs,**

v.

**Louis L. TIMM, et al., Defendants.**

**Bankruptcy No. 84C–01746.**

United States Bankruptcy Court, D. Utah.

June 15, 1988.

William Thomas Thurman, Scott C. Pierce, McKay, Burton & Thurman, Salt Lake City, Utah, for plaintiffs.

Michael Z. Hayes, Mazuran, Verhaaren & Hayes, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION

GLEN E. CLARK, Chief Judge.

This is an action to determine the validity and extent of a trust deed on real property. The Plaintiffs' amended complaint alleges that "[t]he security interests of the Defendants can be satisfied in full by Plaintiffs remitting to the Defendants the fair market value of the property upon which the security interest attaches." At the time of trial of this matter, the Court valued the real property subject to the Defendants' security interest at $39,000.00. The Court then took the matter under advisement for the sole purpose of resolving the issue of whether the debtors in this Chapter 7 case may "redeem" real property, which has been or may be abandoned to them,[1] by paying to the secured creditors the fair market value of the property.

The debtors argue that pursuant to § 506(d) of the Bankruptcy Code, a lien is void to the extent it does not secure an "allowed secured claim." Since an "allowed secured claim" is limited to the value of the collateral pursuant to § 506(a), then they should be allowed to simply pay to the Defendants the value of the real property and take the property free and clear of any security interest which the Defendants might assert.

The Defendants, on the other hand, argue that to allow the debtors to redeem real property under § 506(d) would make § 722 (which deals specifically with redemption in Chapter 7 cases) a superfluous provision. They contend that although the provisions of § 506 apply generally in Chapter 7 cases, see, § 103(a), principles of statutory construction dictate that the more specific provision (here § 722) should take priority over the general Chapter 5 provision.

Section 506 provides in pertinent part:

---

1. There is no evidence before the Court as to whether this real property has been abandoned to the debtors or whether the trustee intends to do so. However, this adversary proceeding only states a cause of action if the property is abandoned. Otherwise, the debtors would have no standing to assert their claim to avoidance and redemption and the property would be liquidated by the Chapter 7 trustee, making these matters moot. Although some courts have allowed Chapter 7 debtors to avoid liens pursuant to § 506(d) even though the property had not been abandoned to them, see, e.g., In re Crouch, 76 B.R. 91 (Bkrtcy.W.D.Va.1987), in this case the debtors ask the Court to authorize them to pay the fair market value of the property to the secured creditor and then take title to the property free and clear of liens. That request can only make analytical sense in conjunction with an abandonment from the trustee, either pursuant to § 554(a) or (b) (upon the filing and granting of an appropriate motion for abandonment), or as a result of the operation of § 554(c) (deeming property "not otherwise administered" to be abandoned at the time of the closing of the case). Although the debtors have claimed a homestead exemption in the Oak City property, it is clear from this proceeding that they have no interest in the property by virtue of that claim since there is no equity to which the exemption might attach. See, Wilson v. General Motors Acceptance Corporation (In re McCoy), 643 F.2d 684 (10th Cir.1981); Styler v. Local Loan Financial Services (In re Lanctot), 6 B.R. 576 (Bkrtcy.D.Utah 1980). Moreover, the trustee of this estate has neither been made a party to this action, nor has he been served with any of the pleadings. Therefore, for the purpose of this opinion, the Court will assume that the real property has been or will be abandoned to the debtors.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

\*     \*     \*     \*     \*     \*

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Section 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

Courts which have considered the interplay between these provisions of the Code are divided on the issue of whether a Chapter 7 debtor may utilize § 506(d) to avoid the undersecured portion of a lien on real property which has or will be abandoned to it and whether such a debtor may pay a secured creditor the fair market value of such real property in full satisfaction of the lien. The leading case allowing such avoidance pursuant to § 506(d) is *In re Tanner*, 14 B.R. 933 (Bkrtcy.N.D.Penn.1981). *See also, In re Walker*, 11 B.R. 43 (Bkrtcy.N.D. Ill.1981); *In re Brace*, 33 B.R. 91, 93–94 (Bkrtcy.S.D.Ohio 1983); *In re Bracken*, 35 B.R. 84 (Bkrtcy.E.D.Penn.1983); *In re Gibbs*, 44 B.R. 475, 478–79 (Bkrtcy.D. Minn.1984); *In re Lyons*, 46 B.R. 604 (Bkrtcy.N.D.Ill.1985); *In re Cleveringa*, 52 B.R. 56 (Bkrtcy.N.D.Iowa 1985); *In re Lindsey*, 64 B.R. 19 (Bkrtcy.C.D.Ill.1986); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In re O'Leary*, 75 B.R. 881 (Bkrtcy.D.Ore. 1987); *In re Gaglia*, 76 B.R. 82 (Bkrtcy.W. D.Penn.1987); and *In re Crouch*, 76 B.R. 91 (Bkrtcy.W.D.Va.1987).

In *Tanner*, the debtor had filed an action requesting the court to declare a third mortgage unsecured and, therefore, void under § 506. The defendant argued that Congress did not intend real property mortgages to be voidable and that "lien" as used in § 506(d) does not refer to a lien of a mortgage on real property. In rejecting that argument, the court recognized the broad definition of "lien" under § 101, and stated:

It is unlikely that Congress would define a lien broadly and then use the word in a narrower sense without so indicating. Further indications of Congressional intent that a real property mortgage is included within the meaning of lien in Section 506(d) are apparent from language elsewhere in the Code.... [Specific] terms are used throughout the Code indicating Congress knew how to designate subspecies of lien when it is so desired. In addition, Congress has demonstrated that when it desired to single out a real property mortgage for special treatment, it will clearly so indicate. An example is Section 1322(b)(2)[.]

14 B.R. at 935. Moreover, the court reasoned that § 506(d) must be construed "in light of the definitional section, Section 506 in its entirety, and the overall scheme of the Code...." *Id.* at 936. In so analyzing the applicable provisions the court concluded that if the undersecured portion of a real property mortgage is not avoidable, a prepetition creditor will impair the debtor's fresh start by partaking in his postpetition property acquisitions, which here includes the postpetition appreciation of real property.

Finally, the court concluded that the bankruptcy procedure was designed to put the debtor and its creditors in the same position they would be if the property had

been sold at a non-bankruptcy forced sale on the petition date:

> At a forced sale the Debtor does not retain title to the property and the over-valued lien holder would not gain from future appreciation or increases in the equity. The Defendant's argument requires attributing to Congress an intent to benefit the real property mortgage holder more under a bankruptcy proceeding than under a non-bankruptcy forced sale. Clearly that is not consistent with the intent of Congress in providing for Debtor "relief" under the Bankruptcy Code.

14 B.R. at 937.

The leading cases which have rejected *Tanner* and its progeny and have refused to allow Chapter 7 debtors to avoid the undersecured liens on abandoned real property are *In re Mahaner,* 34 B.R. 308 (Bkrtcy.W.D.N.Y.1983) and *In re Maitland,* 61 B.R. 130 (Bkrtcy.E.D.Va.1986). *See also, In re Cordes,* 37 B.R. 582 (Bkrtcy.C.D.Calif.1984); *In re Gaglia,* 76 B.R. 82 (Bkrtcy.W.D.Penn.1987); *In re Smith,* 79 B.R. 650 (Bkrtcy.D.Md.1987). In addition, certain of the courts which have felt compelled by their reading of the language of § 506(d) to follow *Tanner* have expressed serious reservations about the result. *See, In re Lyons,* 46 B.R. 604, 606–07 (Bkrtcy.N.D.Ill.1985) ("This problem is a difficult one from a policy perspective because of the apparent divergence here between the law and one's sense of what is equitable. On the one hand, as other courts have noted, the relevant question is what the lienholders' interests would be outside bankruptcy. That is, what each lienholder would receive in a foreclosure should also be the worth of his lien in the bankruptcy setting. On the other hand, it seems manifestly unfair to permit a debtor to retain his house after avoiding liens to the extent they exceed the value of the collateral. As of this time, however, that result seems to be the one which the Code compels."); *In re Worrell,* 67 B.R. 16, 20 (C.D.Ill.1986) ("Even though the Court is holding that a Chapter 7 debtor may use § 506(d) to avoid the operation of a real estate mortgage lien upon his property to the extent that the lien exceeds the value of the property, the Court finds this result unfair and difficult to accept. As the Court said in *Lyons,* '[I]t seems manifestly unfair to permit a debtor to retain his house after avoiding liens to the extent they exceed the value of the collateral.' 46 B.R. at 606–07. This is a difficult problem from a policy perspective because of the Court's sense of what is right and equitable. Nevertheless, the bottom line is that this is a question which Congress should address because the Court cannot rewrite this section of the Bankruptcy Code, and the result reached today appears to be the one which the Code compels.").

In *In re Mahaner,* an undersecured junior mortgage holder moved the court for relief from the automatic stay. In response, the debtors filed a motion under § 506 for a valuation of the real property and indicated their intention to redeem the property by paying the creditor the amount of its interest in the property. In rejecting the debtor's theory, the court articulated three reasons why § 506(d) may not be used by the debtor to avoid a mortgage lien in a Chapter 7 case: "First, it would appear that to permit lien avoidance ... would render 11 U.S.C. § 722 totally surplus.... A fundamental rule of statutory construction is that a specific statute prevails over an ambiguous or even an inconsistent general statute." 34 B.R. at 309. Second, the court observed that it is not good policy to allow a debtor to get in Chapter 7 more than he could in Chapter 11 or 13. In Chapter 13, § 1322(b)(2) prohibits the debtor from modifying a lien on real property if the property is his principal residence. In Chapter 11, the creditor would be able to make an election pursuant to § 1111(b), to be treated as though he were fully secured, thereby protecting his interest in the appreciation of the real property. Parenthetically the court noted that in its view the "more likely policy of the void language of 11 U.S.C. § 506(d) is that it was intended to permit a sale of the collateral by a trustee or the debtor-in-possession to extinguish the entire lien even though it is at a price insufficient to satisfy the debt in full." *Id.*

Third, the court held that such an application of § 506(d) would amount to an unconstitutional taking of a property interest. The court noted that the creditor's right to appreciation in the value of its collateral was a property interest which could not be taken from it without just compensation.

In *In re Maitland*, 61 B.R. 130 (Bkrtcy. E.D.Va.1986), the debtors commenced an adversary proceeding (1) to determine the extent of allowed secured claims against their real property under § 506(a); and (2) to avoid liens against the property to the extent that liens were undersecured, pursuant to § 506(d). The court commenced its analysis by noting the relationship and interdependence of § 506(a) and § 506(d):

> The difficulty this section presents is that § 506(a) seems limited in its application to "property in which the estate has an interest," and it is clear that if the property never has been property of the estate or if property has been abandoned by the trustee as an asset of the estate, the estate does not have an interest which would allow for a § 506(a) determination. In contrast, § 506(d) provides that "to the extent that a lien secures a *claim against the debtor* that is not an allowed secured claim, such lien is void. . . ."

> \*     \*     \*     \*     \*     \*

> One must refer to § 506(a) to find that an allowed secured claim is a secured claim only to the extent of the value of such secured creditor's interest in the *estate's interest* in such property.

> \*     \*     \*     \*     \*     \*

> [Section] 506(a) is intended to value claims against property which is going to be administered under the Code, not property abandoned or released.

61 B.R. at 132–33 (emphasis in original). *See also, In re Harvey*, 3 B.R. 608 (Bkrtcy. M.D.Fla.1980) ("[Section 506(a)] was intended to deal with properties of the estate which are being administered under the Code and not to deal with properties which were released as exempt or abandoned."). The court then concludes that § 506(a) may not be used to bifurcate a claim for

§ 506(d) purposes when property is abandoned to a Chapter 7 debtor:

> Section 506(a) does not contemplate determining the extent to which a claim is allowed for lien avoidance purposes under § 506(d) if the property has been abandoned. If the property is not to be administered as an asset of the estate for liquidation, or for retention by the debtor-in-possession in a Chapter 11 reorganization or a Chapter 13 wage-earner plan, then determination as to the extent a claim is an allowed secured claim serves no statutory purpose, other than as specifically provided under § 722.

*Id.* at 134. The court also noted that if *Tanner* and its progeny were to be followed, § 722 would be rendered meaningless:

> Section 722, however, does not allow the debtor to redeem *real property* by paying the holder of an allowed claim secured by the abandoned or exempted property the secured amount of the claim. Such a result would occur if the debtor could pay the secured creditor with a lien against the debtor's abandoned or exempted real estate an amount equal to the value of the property and then, under § 506(d), void the lien to the extent that it is undersecured. In light of the exclusion of real property in § 722, and its express limitation to specific tangible personal property, it is obvious that Congress did not intend to permit a debtor to redeem his real property through the use of § 506(d).

*Id.* at 135.

As did the courts in *Lyons* and *Worrell, supra*, this Court believes the result in *Tanner* to be unfair and inequitable. However, we do not believe, as did those courts, that such a result is compelled by the language of the Code.

To resolve the issues before the Court it is necessary to understand the rights of debtors and their creditors in property which is abandoned under § 554. Section 554 allows a trustee to abandon property which is burdensome to the estate or which is of inconsequential value. When property is properly abandoned by the trustee,

the property is no longer property of the estate and the estate, consequently, has no interest in the property. *See,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 343 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6299 ("property ceases to be property of the estate, such as by sale, abandonment, or exemption."); *In re Cruseturner,* 8 B.R. 581 (Bkrtcy.D.Utah 1981).

In the *Cruseturner* case this Court also examined the rights of the parties vis-a-vis the property following an abandonment:

> The state of the law under the former Act appears to be that title to all property abandoned by the trustee stood as if no bankruptcy had been filed, which in most cases meant it revested in the debtor. Justice Cardozo aptly expressed this rule in *Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937):
>
> > Whatever title or inchoate interest may have passed to the trustee was extinguished by relation as of the filing of the petition when the trustee informed the court that the shares were burdensome assets, and was directed by the court to abandon and disclaim them. In such case "the title stands as if no assignment had been made." A precise analogy is found in the law of gifts and legacies. Acceptance is presumed, but rejection leaves the title by relation as if the gift had not been made. (Citations omitted.)

In *Wallace v. Lawrence Warehouse Company,* 338 F.2d 392, 394 n. 1 (9th Cir.1964), the Ninth Circuit emphasized the widespread acceptance of this general position:

> The ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously. (Citations omitted).

*See also Sessions v. Romadka,* 145 U.S. 29, 112 S.Ct. 799, 36 L.Ed. 609 (1892); *Sparhawk v. Yerkes,* 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915 (1891); *In re Garfinkle,* 577 F.2d 901 (5th Cir.1978); *In re Ira Haupt & Co.,* 398 F.2d 607 (2d Cir.

1968); *Brookhaven Bank & Trust Co. v. Gwin,* 253 F.2d 17 (5th Cir.1958); *Colson v. Monteil,* 226 F.2d 614 (8th Cir.1955); *Rosenblum v. Dingfelder et al.,* 111 F.2d 406 (2d Cir.1940); *In re Moss et al.,* 21 F.Supp. 1019 (E.D.Ill.1938).

This analysis appears to be equally appropriate to the present law. Section 554 deals with the abandonment of property. Both the House and Senate reports, in explanation of the effect of the section state:

> Abandonment may be to any party with a possessory interest in the property abandoned. In order to aid administration of the case, subsection (b) deems the court to have authorized abandonment of any property that is scheduled under Section 521(1) and that is not administered before the case is closed. That property is deemed abandoned to the debtor.

H.R.Rep. No. 95–595, *supra,* at 377; S.Rep. No. 95–989, *supra* at 92, U.S. Code Cong. & Admin. News 1978, pp. 5878, 6333. Subsection (b), enacted as Section 554(c), was changed in the final draft by deleting references originally made which stated that abandonment under this section would be made specifically to the debtor. Thus, it appears that abandonment under any subsection of 554 will be to a party with a "possessory interest." Generally, a "possessory interest" is defined as a "right to exert control over" or a "right to possess" property "to the exclusion of others." BLACK'S LAW DICTIONARY 1049 (5th ed. 1979). This legislative reference and attendant definition are in keeping with cases under former law which hold that title and right to the property reverts to its pre-bankruptcy status. Thus, whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right. Normally this party is the debtor, but it is conceivable that a creditor may be entitled to possession instead if, by the exercise of its contractual or other rights, it held a possessory interest prior to the filing of bankruptcy.

\* \* \* \* \* \*

*Thus, when the trustee abandons property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy.*

8 B.R. at 590–91 (emphasis supplied).

The confusion which has arisen over the meaning of § 506(d) is due to the application of the language of that section in isolation from its intended role in the distribution scheme of the Bankruptcy Code. Subchapter I of Chapter 5 of the Code governs the filing, allowance, priority, and distribution of claims of creditors through a bankruptcy proceeding. Section 501 governs the filing of proofs of claims. Section 502(a) provides that a claim will be deemed "allowed" if a proof of claim is properly filed, to which no party in interest objects. If an objection is filed, the Court, based on the provisions of § 502(b), will make a judicial determination whether the claim of the creditor will be "allowed" or "disallowed." Similarly, § 503 governs the allowance of administrative expense claims. The purpose of this procedure is to determine which claims of creditors may participate in the distribution of the estate under a Chapter 7 liquidation or which claims may participate in a plan under Chapters 9, 11, 12, or 13. Creditors are not required to file proofs of claim and debts are discharged whether claims are allowed or not. *See*, § 501(a) and §§ 727(b), 1141(d), 1228(a) and 1328(a). Finally, general provisions of distribution are set forth in § 507 (priority of distribution) and §§ 509 and 510 (governing subrogation and subordination of certain claims).

In a case under Chapter 7, a trustee is charged with the duty to "collect and reduce to money the property of the estate." § 704(1). Distributions are then made to secured creditors pursuant to § 725, and unsecured creditors pursuant to the priority scheme set forth in §§ 507 and 726. In addition to these provisions, § 522 allows an individual debtor to exempt certain property from the property of the estate and § 554 allows the trustee to abandon property which is burdensome to the estate or that is of inconsequential value. The re-

sulting effect of the latter two provisions in a Chapter 7 case is to exclude certain property from the liquidation and distribution process. It is within this scheme of allowance and distribution that § 506(a) provides that "[a]n allowed claim of a creditor secured by a lien on property *in which the estate has an interest* ... is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property,* ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." (Emphasis supplied). To facilitate the distribution and participation in the bankruptcy process, the Code splits an allowed claim secured by property of the estate into a secured portion, which is denominated as an "allowed secured claim," and unsecured portion which will be treated as an "allowed unsecured claim." By definition, a creditor may only possess an allowed secured claim if it has a lien on property of the estate and it is an allowed secured claim only to the extent of the value of that interest.

The purpose of this provision, in the Court's view, is to limit the preferential position of a secured creditor in bankruptcy to the extent to which such a creditor would be able to look to its collateral for satisfaction of its debt. Only holders of allowed secured claims are entitled to reject a plan and be protected under cramdown provisions of Chapters 12 or 13. Holders of allowed secured claims in Chapter 11 cases are entitled to retain their liens and receive cash payments under the plan having a present value equal to the value of their interest in the collateral, or to otherwise realize "the indubitable equivalent" of their secured claim. *See*, §§ 1126(a), 1129(b)(2)(A), 1225(a)(5), 1325(a)(5). Only creditors with allowed secured claims may make a § 1111(b) election. The proceeds from the liquidation of a Chapter 7 estate are paid first to creditors holding allowed secured claims. § 724(a)(1).

To fully effectuate this dichotomy of the protection and distribution of allowed secured claims and allowed unsecured claims

under the Bankruptcy Code, § 506(d) provides that a lien is void if it secures a claim that is not an allowed secured claim. To underscore this statutory scheme, § 551 provides that a lien void under § 506(d) is preserved for the benefit of the estate.

It is inconceivable to this Court that Congress could have intended to create an avoiding power in a Chapter 7 debtor, respecting property which is not to be administered through the bankruptcy process, and which is based on a dichotomy created to facilitate the administration and distribution of the bankruptcy estate.

Since the rights in property which is abandoned remain the same as if no bankruptcy had been filed, *Cruseturner, supra,* it would be illogical to allow the debtors by virtue of § 506(d) to avoid a lien which they could not avoid outside of bankruptcy. Upon abandonment, the debtor must bear the burdens as well as the rights which it previously possessed. In *Tanner,* Judge Cosetti acknowledges that pre-bankruptcy law is the appropriate paradigm to apply in abandonment cases. He reasons:

> The Code scheme of Section 506 is that creditors receive through the valuation procedure of the Bankruptcy Court the same property value that they would receive through a non-bankruptcy forced sale of the Debtor's non-exempt assets as of the petition date.... The operation of Section 506(d) merely effectuates the market place.

14 B.R. at 936–937. However, to concentrate exclusively on the debtor's fresh start, as did the *Tanner* court, at the expense of the property rights of creditors is a misguided approach. At a forced sale of real property, the debtors would not retain title to the property as would the debtors here, unless they were to purchase at the sale. If the secured creditor or a third party were to purchase, any appreciation in the value of the property would inure to the benefit of that party and not to the debtors. Moreover, since the timing of a trustee's sale is in the control of the secured creditor, an undersecured creditor can, if it so chooses, defer sale of the property until it has realized any possible benefit from appreciation. In addition, the secured creditor could simply bid in the amount of its debt at the sale and thereby control the amount of the sales price as well as the timing of the sale. Therefore, even if the debtors were willing and able to purchase at a forced sale, as these debtors now claim to be, they could not compel such a result on an objecting secured creditor, since the timing of the sale and the amount of sales price is in the latter's control. Finally, pursuant to this Court's analysis, if the debtors have such remedies under Utah state law, they may now employ them. However, we conclude that § 506(d) does not grant any additional rights to the debtors in abandoned property than they would have had under prepetition nonbankruptcy law.

The approach suggested by the Court does not impede the debtors' fresh start. They can give up their interest in the property and obtain their fresh start. Moreover, any deficiency claim is clearly within the scope of the debtors' discharge. However, in this case the debtors are attempting to get more than a fresh start. The debtors want to keep their property and be entitled to the future appreciation in the value of the real property without paying the full amount of the obligation secured by the lien. That is something to which they would not be entitled at a forced sale of the property. Absent abandonment, it is also something they would not be entitled to in a bankruptcy proceeding. Pursuant to § 551, any interest or value arising out of an avoidance under § 506(d) would be preserved for the benefit of the estate and creditors with claims against it.

## CONCLUSION

For the reasons set forth herein, the Court holds that a Chapter 7 debtor may not utilize § 506(d) to avoid the undersecured portion of a lien on property which is exempt or which has or will be abandoned by the trustee. The avoiding power of that section is limited to property which is property of the estate and is administered by the trustee.