In re William M. LARSON, Jr., M.D., dba Alaska Allergy and Pediatric Clinic, and Colleen L. Larson, aka Colleen L. Mueller, aka Colleen Mueller Larson, Debtor(s).

William M. LARSON, Jr., and Colleen L. Larson, Plaintiff(s),

v.

ALLIANCE BANK, as successor-in-interest to United Bank Alaska, Municipality of Anchorage, Goentzel Builders, Inc., Kenai Supply, Inc., Scott Mechanical Construction, Inc., Spenard Builders Supply, Inc., Raven Electric, Inc., Fair Trade Construction, Inc., Landmark Associates, a/k/a Landmark & Associates, Roger Bjelland, Rory Bjelland, Howard Cornette, Don Eubanks, Carl S. Hornbeck, Gary Jacobsen, John Kerr, Paul J. Marsingill, Jr., John C. Parker, Jack Skeen, Ralph M. Tipton, Patrick T. Waters, Bob L. Whitt, Anthony W. Lerma, Mark Heatley d/b/a Spectrum Plumbing, Dennis Fairbanks, Linda Fairbanks, Paul Bunyan Contracting, Inc., Robert J. Baker, Anchorage Sand & Gravel Co., Inc., David Beeman Progressive Realty, Inc., Ameritone Paint Center, Anchorage Refuse, Inc., and Dale I. Freeman, Defendant(s).

Bankruptcy No. A–88–00291.

Adv. No. A–88–00291–001.

United States Bankruptcy Court, D. Alaska.

April 19, 1989.

Ralph B. Cushman, Law Offices of Ralph B. Cushman, Anchorage, Alaska, for plaintiffs/debtors.

Herbert Berkowitz, George R. Lyle, Guess & Rudd Anchorage, Alaska, for defendant, Alliance Bank.

AMENDED MEMORANDUM RE AWARD OF SUMMARY JUDGMENT TO ALLIANCE BANK

HERBERT A. ROSS, Bankruptcy Judge.

A motion for summary judgment was filed by the Larsons who are the plaintiffs in this adversary proceeding and the debtors in the chapter 7 case. The summary judgment motion seeks to establish that the Larsons may "strip down" the amount of the secured claim [1] of Alliance Bank, secured by a deed of trust on nonexempt real estate, from the total amount owed on the debt to a lesser amount equal to the decreased value of the property. The value of the real estate is substantially less than the balance owed Alliance Bank.

---

1. The claim of an "undersecured creditor" who has a security interest in property is treated under the Bankruptcy Code as being two claims, one a secured claim and one an unsecured claim. *In re Glenn*, 796 F.2d 1144, 1147 (9th Cir.1986). But, as outlined below, the debtors in this case cannot use this concept to strip down nonexempt property which the trustee has abandoned.

The debtors and Alliance agree that the property will be abandoned by the trustee. The basis of the proposed strip down is 11 U.S.C. § 506(d). There are lien claimants junior to the deed of trust of Alliance Bank whose liens are also to be avoided by the adversary proceeding, but only Alliance Bank has filed an opposition to the summary judgment motion.

The court holds that summary judgment should be granted to Alliance Bank because the Larsons are not entitled to strip down the Alliance Bank deed of trust on nonexempt property by using § 506(d)[2].

The real property in question is an apartment building in Anchorage which was owned by the Larsons when they filed chapter 7. It was encumbered on the petition date by a construction loan owed to Alliance Bank in the amount of about $3,400,000, plus a number of mechanic's and materialman's liens, one of which is almost $800,000 alone.

The Larsons have an appraisal[3] showing that the value of the apartment building is only $1,250,000 in the depressed Anchorage economy. They propose to give a first priority position to 1987 and 1988 Municipality of Anchorage real property taxes totaling $36,471.79, and to avoid all but $1,213,528.21 of the Alliance Bank deed of trust and related security agreement. Other liens of the other lienholders would be avoided completely.

The parties have cited a number of the leading cases showing the split of authority as to whether § 506(d) can be used to strip down a mortgage in a chapter 7 case. A list of cases on either side of the issue appears in the Appendix to this memorandum. *See also* 3 Collier on Bankruptcy ¶ 506.07 fn. 25 and 26 (15th ed. 1989).

§ 506(d) was a new provision in the Bankruptcy Reform Act of 1978, and had no counterpart under the Bankruptcy Act of 1898. 3 Collier on Bankruptcy ¶ 506.07 at 506–70 (15th ed. 1989). The inquiry into the meaning of § 506(d) begins with the statutory language, itself. The plain meaning should be given effect, except in an unusual case where the results would be "demonstrably at odds with the intention of the drafters." *United States v. Ron Pair Enterprises*, — U.S. —, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), a 5 to 4 decision about the meaning of § 506(b) in light of the placement of a comma.

§ 506(d) is not so clear that it can be interpreted by just reading that subsection. § 506(d) must be read in conjunction with the rest of § 506, and with a view of its function in the entire Code. See *In re Tanner*, 14 B.R. 933, 935 (Bankr.W.D.Pa. 1981).

The cases in favor of allowing a strip down by a chapter 7 debtor rely on the "plain wording" of the statute. Most of the cases emphasize that this treatment can be justified as contributing to the debtor's fresh start. This view is supported by a larger number of the cases, and, certainly, the two circuits which have ruled on the issue. *In re Folendore*, 862 F.2d 1537 (11th Cir.1989) and *In re Lindsey*, 823 F.2d 189 (7th Cir.1987). *See also* 3 Collier on Bankruptcy ¶ 506.07 at 506–74 to 506–76 (15th ed. 1989).

The cases opposing strip down often reason that allowing a strip down: (a) is inconsistent with the redemption scheme under 11 U.S.C. § 722; (b) is inconsistent with the concept of abandonment under 11 U.S.C. § 554; (c) would dampen the use of the reorganization chapters by allowing an end run around the requirements of reorganization; and, (d) flirts with an unconstitutional taking. In addition, several cases focus on the overall scheme of the Bankruptcy Code and find strip down by a chapter 7 debtor of nonexempt property to be inconsistent with the overall purposes of the Code. One of the more articulate expressions is found in *In re Dewsnup*, 87 B.R. 676 (Bankr.D.

---

2. All references to statutes are to the Bankruptcy Reform Act of 1978 (Pub.Law No. 95–598) and its amendments found in Title 11 of the United States Code.

3. The appraisal is as of the filing date of this bankruptcy case. That would not necessarily be the appropriate date for the valuation had the court ruled that strip down was available. *See,* 3 Collier on Bankruptcy ¶ 506.04 at 506–37 (15th ed. 1989).

Utah, 1988). That court felt that the cases allowing strip down focused too much on the "fresh start" aspect to the detriment of the other goals of the Code. *See also In re Cordes,* 37 B.R. 582 (Bankr.C.D.Cal.1984). I agree.

There is no binding Ninth Circuit appellate authority. Some of the Bankruptcy Courts in the Ninth Circuit which have spoken on the issue are: *In re McLaughlin,* 92 B.R. 913 (Bankr.S.D.Cal.1988), rejecting the right of a chapter 7 debtor to strip down; *In re O'Leary,* 75 B.R. 881 (Bankr.D.Ore.1987), allowing a strip down; and, *In re Cordes,* 37 B.R. 582 (Bankr.C.D. Cal.1984), disapproving strip down.

The key question boils down to whether § 506(d) can be used to strip down a lien for the benefit of a chapter 7 debtor as an adjunct to the debtor's "fresh start" in a situation involving nonexempt property which the trustee is abandoning. I do not believe it can.

11 U.S.C. § 506(d) says:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of the title; or

> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.[4]

§ 506(d) should not be read as a free floating right to strip down a mortgage in any conceivable situation. § 506(d) must be read in conjunction with § 506(a) which says:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in the property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*

[Emphasis added]

The valuation should be in conjunction with some "disposition or use"[5] or "plan affecting the creditor's interest." Nonexempt property which is merely abandoned from the estate does not qualify for this description. Compare, *In re Dewsnup, supra,* at 682–683 with *In re Gibbs,* 44 B.R. 475, 478 (Bankr.D.Minn.1984).

When nonexempt property which is the subject of the secured claim is actively involved in the bankruptcy process, be it a reorganization or a liquidation case, there may be some logical justification for stripping down the lien on property. Once it

---

**4.** This is the version which has been in existence since the Bankruptcy Amendments and Federal Judgeship Act of 1984, § 448 of Pub.L. No. 98–353. The original § 506(d) of the Bankruptcy Reform Act of 1978 read:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1) a party in interest has not requested that the court determine and allow or disallow such claim section 502 of the title; or
> (2) such claim was disallowed only under section 502(e) of this title.

In a floor statement just before the passage of the bill, Senator DeConcini, one of the floor managers of the 1978 Bankruptcy Reform Act, said that, under the version of § 506(d) adopted, "the debtor is a party in interest." 124 Congressional Record S 17406 (Oct. 6, 1978). In *In re Dewsnup,* 87 B.R. 676 n. 1 (Bankr.Utah 1988), the court questioned whether, if the property had not been abandoned, the debtor would have had standing to apply for a strip down. In light of Senator DeConcini's statement, it appears a debtor is a proper party to file a motion.

**5.** An example of a "disposition" of property to which § 506 would apply is a trustee's motion to sell over encumbered property free and clear of liens pursuant to § 363(f)(3) of the Bankruptcy Code. This is possible, even though § 363(f)(3) appears on its face to apply only if all liens can be paid, because § 506(a) allows the court to value the secured claims. *See In re Beker Industries Corp.,* 63 B.R. 474 (Bankr.S.D. N.Y.1986).

passes out of a liquidation case estate by abandonment, the justification for stripping down is thin.

A leading case for strip down, *In re Tanner*, 14 B.R. 933, 936–937 (Bankr.W.D. Pa.1981), held that strip down was proper since the creditor was not being deprived of anything and was getting the exact value to which the creditor's secured claim was entitled. I disagree with the *Tanner* line of cases because the legislative history never mentions the use of § 506(d) as a separate avoidance power or an adjunct to the "fresh start" in the case of nonexempt property. The legislative history does mention many other sections which do aid the fresh start: (a) § 362(a), the automatic stay; (b) § 366, the maintenance of utility services; (c) § 522, the exemption statute and avoiding powers; (d) § 524, the discharge injunction and reaffirmation procedure; (e) § 525, protection against certain discriminatory treatment; (f) § 722, the redemption of consumer type property; and, (g) § 727, the discharge. H.R.Rep. 95–595 to Pub.Law No. 95–598 at 125–129 and 162–165, 95th Cong.–2nd Sess (1978), U.S. Code Cong. & Admin.News 1978 at 5787, 5963, 6086–6090, 6123–6126.

There may be situations in which a valuation under § 506(d) is necessary to determine how much an "undersecured" creditor can partake in a dividend to general unsecured creditors. In the case at bar, where the creditor is willing to forsake unsecured status and the potential (although, unlikely) right to an unsecured dividend, the debtor should not be permitted to force a valuation and strip down a creditor's lien rights. Many of the cases cited in the Appendix deal with residences. The case at bar involves a multimillion dollar construction project and does not present the sympathetic picture of the "honest but unfortunate debtor" as *Tanner*, at 936, describes it.

Exempt property is another story. Even in the case of an abandonment of property under § 554 by the trustee, § 506(a) and (d) can play a role in the redemption of property under § 722. Also, in the case of exempt property, § 506(d) may play a role by virtue of § 522(c)(2)(A) which states that exempt property is not liable for any prepetition debt except where the debt is secured by a lien not avoided under § 522(f) or (g), §§ 544–549, or § 724(b) *and* is "not void under section 506(d)." I have found no cases interpreting § 522(c)(2)(A). The legislative history says that it stands for the proposition that liens usually pass through the bankruptcy proceeding unaffected. "However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent the lien is not allowed." H.R. 95–595 to Pub.Law No. 95–598 at 357, 95th Cong.–2nd Sess (1978) U.S.Code Cong. & Admin. News 1978 at 6312. § 522(c)(2)(A) is the only statutory indication that a chapter 7 debtor might be able to use § 506(d), but it seems directly connected with a "fresh start" statute, the exemption statute, § 522.

The stakes in this case are high. The parties may be about a million dollars apart in their valuations. Valuation is a precarious enough undertaking, which should be done only when the code requires it for some legitimate bankruptcy purpose. *See In re Sandy Ridge Development Corp.*, 77 B.R. 69, 73 (Bankr.M.D.La.1987). Valuation under § 506 is a flexible concept, and the "value" may change during the course of a case, depending on the purpose of the valuation. One piece of property may be valued at one amount for relief from stay or adequate protection purposes, and another for plan confirmation purposes. 3 Collier on Bankruptcy ¶ 506.04 at 506–24 to 506–38 (15 ed. 1989). To subject a creditor to the vagaries and uncertainties of a valuation hearing where the strip down serves no valid chapter 7 purpose and is not an element of an honest debtor's fresh start is unfair to the creditor.

Where the nonexempt property is being abandoned from the estate, and the creditor is willing to take it in satisfaction of its debt, stripping down by a chapter 7 debtor

will not be allowed.[6] *In re Dewsnup, supra.*

### APPENDIX OF CASES REGARDING "STRIP DOWN"

The following cases support the use of 11 U.S.C. § 506(d) by a chapter 7 debtor to strip down lien to avoid a portion of the lien when the collateral value is less than the amount of the debt:

(a) *In re Lindsey,* 823 F.2d 189 (7th Cir. 1987)

(b) *In re Folendore,* 862 F.2d 1537 (11th Cir.1989)

(c) *In re Cleveringa,* 52 B.R. 56 (Bankr. N.D.Iowa 1985)

(d) *In re Worrell,* 67 B.R. 16 (Bankr.C.D. Ill.1986) [the controlling opinion in the 7th Circuit, in which this and the following Illinois cases are located is *In re Lindsey, supra*]

(e) *In re Pitre,* 11 B.R. 777 (Bankr.E.D. Ill.1981)

(f) *In re Lyons,* 46 B.R. 604 (Bankr.N.D. Ill.1985)

(g) *In re Garnett,* 88 B.R. 123 (Bankr.W. D.Ky.1988)

(h) *In re Smith,* 79 B.R. 650 (Bankr.D. Md.1987)

(i) *In re Gibbs,* 44 B.R. 475 (Bankr.D. Minn.1984)

(j) *In re Brace,* 33 B.R. 91 (Bankr.S.D. Ohio 1983)

(k) *In re O'Leary,* 75 B.R. 881 (Bankr.D. Ore.1987)

(l) *In re Mays,* 85 B.R. 955, 958–962 (Bankr.E.D.Pa.1988)

(m) *In re Tanner,* 14 B.R. 933 (Bankr.W. D.Pa.1981) and *In re Vigne,* 18 B.R. 946 (Bankr.W.D.Pa.1982) [probably no longer controlling in that district in light of *In re Gaglia,* 97 B.R. 250, (W.D.Pa.1989)]

(n) *In re Crouch,* 76 B.R. 91 (Bankr.W. D.Va.1987)

The following cases reject the use of 11 U.S.C. § 506(d) by a chapter 7 debtor to strip down lien to avoid a portion of the lien when the collateral value is less than the amount of the debt:

(a) *In re Cordes,* 37 B.R. 582 (Bankr.C. D.Cal.1984)

(b) *In re McLaughlin,* 92 B.R. 913 (Bankr.S.D.Cal.1988)

(c) *In re Sloan,* 56 B.R. 726 (Bankr.D. Colo.1986)

(d) *In re Harvey,* 3 B.R. 608 (Bankr.M.D. Fla.1980) [the holding in this case, one of the first published on the subject, is no longer controlling in light of the 11th Circuit's 1989 opinion in *In re Folendore, supra*]

(e) *In re Hoyt,* 93 B.R. 540 (Bankr.S.D. Iowa 1988)

(f) *In re Smith,* 79 B.R. 650 (Bankr.D. Md.1987)

(g) *In re Mahaner,* 34 B.R. 308 (Bankr. W.D.N.Y.1983)

(h) *In re Wolf,* 58 B.R. 354 (Bankr.N.D. Ohio 1986)

(i) *In re Nefferdorf,* 26 B.R. 962 (Bankr. E.D.Pa.1983)

(j) *In re Gaglia,* 97 B.R. 250, 1989 WL 20449 (W.D.Pa.1989)

(k) *In re Maitland,* 61 B.R. 130 (Bankr. E.D.Va.1986)

(l) *In re Dewsnup,* 87 B.R. 676 (Bankr. D.Utah, 1988)

---

6. Alliance Bank has scheduled a nonjudicial foreclosure which will have the effect of eliminating any deficiency judgment in this case. Alaska Stat. 34.20.070 et seq.