In re Richard S. DOUTHART, Mary–Ann T. Douthart, Debtors.

Richard S. DOUTHART, Mary–Ann T. Douthart, Plaintiffs,

v.

SECURITY PACIFIC FINANCE CORP., Defendant.

Bankruptcy No. 90–852.
Adv. No. 90–119.

United States Bankruptcy Court,
D. New Hampshire.

Nov. 29, 1990.

William R. Dunn, Berwick, Me., for Security Pacific Finance Corp., defendant.

Philip A. Brouillard, Laconia, N.H., for Richard and Mary–Ann Douthart, plaintiffs.

Janis Burns, Boston, Mass., U.S. Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding concerns the validity and extent of a certain lien held by the defendant on the residence of the plaintiffs pursuant to § 506(d) of the Bankruptcy Code. More specifically it involves the question of whether a chapter 7 debtor can use § 506(d) to value the real property supporting a mortgage debt and have the secured claim reduced to the value of the property when the property will not be liquidated or administered by the chapter 7 trustee. This Court has jurisdiction under 28 U.S.C.A. 157(b)(2)(K) and the general reference order dated February 11, 1985 by the U.S. District Court for New Hampshire. The court held a trial on this matter on October 26, 1990.

### Facts

The Court valued the residence of the plaintiffs at $95,000 at the trial. There exists a first mortgage of approximately $85,000.00 on the property, and a second mortgage of approximately $28,000.00, which is the lien in question in this adversary proceeding. Plaintiffs claim a statutory homestead exemption of $10,000.00.[1]

### Legal Discussion

The chapter 7 plaintiffs-debtors argue that under 506(d) a lien is void to the extent it does not secure an "allowed secured claim." Such a claim is limited to the value of the collateral under 506(a). Thus, the debtors wish to void that portion of the second lien that exceeds the value of the residence, after taking into account the first mortgage. Thus, about $18,000.00 of the second lien is sought to be avoided.

---

1. This fact is cited in the complaint as part of the basis for debtor's claim to be entitled to void the lien. However, at the trial the debtor admitted the sole basis for avoiding the lien is 506(d), and the homestead exemption is irrelevant. In any event, it has been held that exempt property would not be entitled to the benefit of 506(d) because it is not property of the estate under 506(a). See *Matter of Doty,* 104 B.R. 133 (Bankr.S.D.Iowa 1989); *In re Shrum,* 98 B.R. 995 (Bankr.W.D.Okla.1988) (en banc).

After avoiding it, the debtors presumably would either redeem the entire debt or work out a payment plan.

A crucial fact is that the trustee will likely abandon the property pursuant to section 554(a). In fact, although he has not formally abandoned the property at this time, he has filed a no asset report, and I can safely assume with no equity present that it will be abandoned. Other courts have made this assumption for purposes of a 506(d) ruling. See *In re Lange*, 120 B.R. 132 (9th Cir.BAP 1990); *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988); *In re Spendio*, 1989 WL 223054 (Bankr.W.D.N.Y. 1989); *In re Hoyt*, 93 B.R. 540 (Bankr.S.D. Iowa 1988).

The key statutory provision to evaluate plaintiffs' claim is section 506. It reads:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in the property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

.  .  .  .  .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The courts are about evenly split on whether a chapter 7 debtor may utilize 506(d) to avoid the undersecured portion of a lien on real property which has been or will be abandoned.

Those courts allowing avoidance include: *Gaglia v. First Federal Savings & Loan Association*, 889 F.2d 1304 (3rd Cir.1989); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In re Kostecky*, 111 B.R. 823 (Bankr.D.Minn. 1990); *In re Zobenica*, 109 B.R. 814 (Bankr.W.D.Tenn.1990); *In re Frengel*, 115 B.R. 569 (Bankr.N.D.Ohio 1989); *In re Zlogar*, 101 B.R. 1 (Bankr.N.D.Ill.1989); *In re Hunter*, 101 B.R. 294 (Bankr.S.D.Ala.1989); *In re Garnett*, 88 B.R. 123 (Bankr.W.D.Ky. 1988) aff'd 99 B.R. 757 (W.D.Ky.1989); *In re Haugland*, 83 B.R. 648 (Bankr.D.Minn. 1988); *In re Crouch*, 76 B.R. 91 (Bankr.W. D.Va.1987); *In re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987); *In re Cleveringa*, 52 B.R. 56 (Bankr.N.D.Iowa 1985); *In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn. 1984); *Brace v. State Farm Mut. Auto Ins. Co.*, 33 B.R. 91 (Bankr.S.D.Ohio 1983); see also, *In re Folendore*, 862 F.2d 1537 (11th Cir.1989); *In re Lindsey*, 823 F.2d 189 (7th Cir.1987).

Those courts not allowing avoidance include: *In re Dewsnup*, 908 F.2d 588 (10th Cir.1990); *In re Lange*, 120 B.R. 132 (9th Cir.BAP 1990); *In re Mammoser*, 115 B.R. 758 (Bankr.W.D.N.Y.1990); *In re Israel*, 112 B.R. 481 (Bankr.D.Conn.1990); *Matter of D'Angona*, 107 B.R. 448 (Bankr.D.Conn. 1989); *In re Doty*, 104 B.R. 133 (Bankr.S. D.Iowa 1989); *In re Larson*, 99 B.R. 1 (Bankr.D.Alaska 1989); *In re Spendio*, 1989 WL 223054 (Bankr.W.D.N.Y.1989); *In re Hoyt*, 93 B.R. 540 (Bankr.S.D.Iowa 1988); *In re McLaughlin*, 92 B.R. 913 (Bankr.S.D.Cal.1988); *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986); *In re Wolf*, 58 B.R. 354 (Bankr. N.D.Ohio 1986); *In re Smith*, 79 B.R. 650 (Bankr.D.Md.1987); *In re Cordes*, 37 B.R. 582 (Bankr.C.D.Cal. 1984); *In re Mahaner*, 34 B.R. 308 (Bankr. W.D.N.Y.1983); *In re Harvey*, 3 B.R. 608 (Bankr.M.D.Fla.1980); see also *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okla.1989) (en banc).

■ The primary flaw with the debtors' position is that abandoned property is not "property in which the estate has an interest" pursuant to 506(a). As the Tenth Circuit stated in *In re Dewsnup, supra*, at 590–91:

This analysis overlooks the fundamental premise of the language contained in this section. In order to apply section 506(a), the estate must have an interest in the property. The estate has no interest in, and does not administer, abandoned property. In *In re Maitland*, the court stated:

The difficulty this section presents is that § 506(a) seems limited in its application to "property in which the estate has an interest," and it is clear that if the property never has been property of the estate or if property has been abandoned by the trustee as an asset of the estate, the estate does not have an interest which would allow for a § 506(a) determination.

61 B.R. 130, 132–33 (Bankr.E.D.Va.1986). Consequently, debtors cannot void these liens.

A second reason for rejecting the debtors' contention is that sections 506(a) and (d) were "intended to facilitate valuation and disposition of property in the reorganization chapters of the Code." *In re Dewsnup, supra*, at 591. See also *In re Dewsnup*, 87 B.R. 676, 682–83 (Bankr.D. Utah 1988). There is no indication that these sections were intended as an avoiding power for chapter 7 debtors. See generally *In re Mammoser, supra*. The function of 506(d) was aptly described in *In re Maitland*, 61 B.R. 130, 134 (Bankr.E.D.Va.1986) as follows:

... the intention of § 506(a) is to assist in the determination and distribution of funds of the estate to secured and unsecured creditors, to determine the amount of a secured claim for purposes of confirmation of a plan of reorganization under Chapter 11 or Chapter 13, to determine the amount of adequate protection to which a creditor is entitled under § 361 and § 363(e) if cash collateral is to be used by the debtor under § 363(c)(2), or to determine the amount of the debtor's exemptions in encumbered property. Butler, "Valuation of Secured Claims under 11 U.S.C. § 506(a)," 89 *Com.L.J.* 342, 345 (1984).

. . . . .

Thus, the question is what is the function of § 506(d)? This Court is of the opinion that § 506(d) is intended merely to facilitate the sale of collateral by the trustee or the debtor-in-possession in order to extinguish the entire lien even though the sale is at a price insufficient to satisfy the lien in full.

Indeed, to allow chapter 7 debtors to "strip down"[2] undersecured liens would give them greater rights than debtors have under other chapters of the Code, and would thwart the preference for reorganization. For example, under section 1322(b)(2), a chapter 13 debtor may not modify the rights of secured claim holders where the claim is secured by the debtor's primary residence. Also, section 1111(b)(2) allows a chapter 11 creditor to elect to allow a secured lien to remain on the property to the full extent of the original debt.

Finally, it is evident from a reading of section 722 that Congress did not intend to permit chapter 7 debtors to redeem *real* property by using the "allowed secured claim" device available in the bankruptcy courts. Section 722 provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

This is the only redemption provision for chapter 7 debtors and it excludes real property. It supports the inference that Congress must not have intended that a chap-

---

**2.** This is the term used by some courts to define the concept the debtors are proposing.

ter 7 debtor could redeem real property in the fashion here asserted, since Congress could quite easily have provided for this unique power of redemption in the specific provision dealing with that concept in the Bankruptcy Code.

Those courts allowing chapter 7 debtors to avoid an undersecured lien usually rely on the "plain meaning" of section 506(d). See, e.g., *In re Gaglia, supra,* at 1308. This Court itself has recently emphasized the plain meaning rule in statutory construction under current Supreme Court decisions. *In re PSNH,* 108 B.R. 854 (Bankr. D.N.H.1989). However, in the case of § 506 you only look to subsection (d) if one first passes the threshold of § 506(a) referring to "property in which the estate has an interest." Thus, proper application of the plain meaning rule does not result in a ruling in favor of the debtor.

Even if one were to focus on § 506(d) alone, the asserted plain meaning of § 506(d) should not be applied because it would "produce a result demonstrably at odds with the intention of its drafters," *United States v. Ron Pair Enter. Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), because other statutory provisions in the Code suggest a contrary result. See *Matter of D'Angona, supra,* at 451; *In re PSNH, supra,* at 876. See also Sections 552(b) and 362(d)(2) of the Bankruptcy Code.

Those courts allowing chapter 7 debtors this avoiding power also often claim they are being faithful to the Code's policy of giving the debtor a "fresh start." See, e.g. *In re O'Leary, supra.* However, this proposed avoiding power goes far beyond a fresh start. As Bankruptcy Judge Clark explained in the lower court opinion in *In re Dewsnup,* 87 B.R. 676, 683:

> The approach suggested by the Court does not impede the debtors' fresh start. They can give up their interest in the property and obtain their fresh start. Moreover, any deficiency claim is clearly within the scope of the debtors' discharge. However, in this case the debtors are attempting to get more than a fresh start. The debtors want to keep

their property and be entitled to the future appreciation in the value of the real property without paying the full amount of the obligation secured by the lien. That is something to which they would not be entitled at a forced sale of the property. Absent abandonment, it is also something they would not be entitled to in a bankruptcy proceeding. Pursuant to § 551, any interest or value arising out of an avoidance under § 506(d) would be preserved for the benefit of the estate and creditors with claims against it.

### Conclusion

These chapter 7 debtors cannot use § 506(d) to avoid the undersecured portion of a lien on their residence when that property will remain their asset upon being abandoned by the trustee and will not be administered as part of this estate.