**In re Patricia Louise BROUSE, Debtor.**

**Patricia Louise BROUSE, Plaintiff,**

v.

**CSB MORTGAGE CORP. and Colorado National Bank South, Defendants.**

Bankruptcy No. 89–B–11631–A.
Adv. No. 89–A–1038.

United States Bankruptcy Court,
D. Colorado.

Feb. 9, 1990.

**540**

Thomas E. Orrell, John A. Cimino, P.C., Denver, Colo., for defendant, Colorado Nat. Bank South.

Harold J. Baer, Jr., Harold J. Baer, Jr., P.C., Denver, Colo., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Complaint to Determine the Value of Lien and Allow the Deficiency as Unsecured. The Chapter 13 Debtor, Patricia Louise Brouse ("Debtor" herein), requests an order of the Bankruptcy Court avoiding two creditors' liens pursuant to 11 U.S.C. § 506(d). The dispute is submitted to the Court on stipulated facts and presents two issues for the Court's determination.

The first issue is the ubiquitous and much contested issue of whether or not a debtor can "write down," "strip," or cause to "vanish," a lien securing a creditor's claim if the creditor's claim exceeds the value of the collateral. This Debtor seeks, pursuant to Section 506(d), an order of Court to avoid, or to extinguish, two creditors' liens on her home to the extent the amount of the creditors' claims exceed the value of the collateral.

The second issue is whether or not a Chapter 13 debtor is precluded from avoiding a lien pursuant to Section 506(d), because of the language of 11 U.S.C. § 1322(b)(2) which provides, essentially, that a debtor may not modify the rights of a creditor whose claim is secured only by a security interest in the debtor's principal residence.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The facts are essentially not in dispute. Debtor owns her residence which is valued at approximately $27,120.00.[1] Defendant CSB Mortgage Company ("CSB" herein) holds a claim against the Debtor in the sum of approximately $45,000.00, which claim is secured by a first deed of trust on the Debtor's principal residence. Defendant Colorado National Bank South ("Bank"

---

1. The parties dispute the actual value, but agree it is less than CSB Mortgage Company's claim which is secured by a first deed of trust on Debtor's home and substantially less than the sum of the CSB mortgage and Colorado National Bank South's second lien. A hearing will be scheduled by the Court to determine the actual fixed value of the secured claim.

herein) holds a claim against the Debtor in the sum of approximately $9,000.00, which claim is secured by a lien on the property in a second position. Encumbrances on the Debtor's principal residence, therefore, exceed the value of the residence by approximately $26,880.00.

Pursuant to 11 U.S.C. § 506(a),[2] CSB has a claim secured by the collateral in the sum of approximately $27,120.00 and an unsecured claim in the approximate sum of $17,-880.00. Likewise, the Bank has an unsecured claim in the approximate amount of $9,000.00. Secured claims are "secured to the full extent, and only to the full extent, that there is value in the collateral actually securing the claim.... The claim against the estate is, in effect, bifurcated into secured and unsecured components." *In re Hermansen*, 84 B.R. 729, 734 (Bankr.D.Colo.1988).

Debtor filed a Motion to Confirm her Chapter 13 Plan and the Bank objected to the Plan because, the Bank maintains, the Plan attempts to modify its claim which is secured only by the Debtor's principal residence and such modification is in violation of 11 U.S.C. § 1322(b)(2). No other objections were filed to Debtor's Plan. Debtor filed the within adversary proceeding to determine her right to avoid both liens and otherwise fix the validity, priority, and extent of the two liens on her home. Because the Debtor's Complaint in the adversary proceeding raises the identical issues to those raised in the Bank's objection to confirmation, this Court has consolidated the objection to confirmation hearing with the decision in the adversary proceeding for purposes of judicial efficiency.

## DISCUSSION

■ The first question before the Court is, as stated above, can the Debtor invoke Section 506(d) to avoid two lien claims to the extent that the claims exceed the value of the collateral?[3] More specifically, can this Debtor avoid (1) the Bank's second lien on her principal residence to the full extent of its $9,000.00 claim, and (2) CSB's deed of trust to the extent of approximately $17,-800.00, the amount of the claim in excess of the estimated value of her property?

This Court finds and concludes that this Debtor, and generally any debtor, may use Section 506(d) to avoid lien claims, in whole or in part, which exceed the value of the collateral securing such claims.

This issue has generated many different opinions and a sharp difference in decisions, everywhere. The majority of courts addressing this issue have expressed the view which this Court adopts by this decision. *In re Folendore*, 862 F.2d 1537 (11th Cir.1989); *Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir.1989); *Matter of Lindsey*, 823 F.2d 189 (7th Cir. 1987); *In re Garnett*, 88 B.R. 123 (Bankr. W.D.Ky.1988); *In re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981); *accord* 3 Collier on Bankruptcy § 506.07 at 506–71 (15th ed. 1988).

These many opinions have already fully analyzed and expressed well the various, compelling reasons why, in this Court's opinion, a debtor should be able to utilize

---

2. "§ 506. **Determination of secured status.** (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with

any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

3. Section 506(d) of the Bankruptcy Code provides: "(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." 11 U.S.C. § 506(d).

Section 506(d) to avoid lien claims which are unsecured or undersecured pursuant to Section 506(a). I will not here repeat those reasons; I will simply adopt them.

There are thoughtful opinions, as well, which reject this view. *Matter of D'Angona*, 107 B.R. 448 (Bankr.D.Conn.1989); *In re Doty*, 104 B.R. 133 (Bankr.S.D.Iowa 1989); *In re Larson*, 99 B.R. 1 (Bankr.D. Alaska 1989); *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okla.1989); *In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988); *In re Maitland*, 61 B.R. 130 (Bankr.E.D.Va.1986); *In re Cordes*, 37 B.R. 582 (Bankr.C.D.Cal. 1984); *In re Mahaner*, 34 B.R. 308 (Bankr. W.D.N.Y.1983).

Two opinions in this District which reject this view and deny a debtor's use of Section 506(d), generally, to avoid lien claims include *In re Triplett*, No. 88–E–0748, (Bankr.D.Colo. February 15, 1989) [unpublished opinion of Chief Judge Charles E. Matheson] and *In re Sloan*, 56 B.R. 726 (Bankr.D.Colo.1986) [opinion of Judge Roland J. Brumbaugh].[4]

Simply stated, this Court is persuaded that the majority view allowing a debtor to employ Section 506(d) is correct in legal terms, sound in terms of statutory construction, and unavoidable under the fresh start concept of the Bankruptcy Code. *In re Folendore* best sums up the reasons for granting to debtors use of Section 506(d) to avoid certain lien claims:

The plain language of the statute, supported by the decisions of a majority of the bankruptcy courts, inferences drawn from the 1984 amendments, and common sense, requires the ... lien be voidable whether or not [the lienor's] claim has been disallowed under section 502.
*In re Folendore, supra* at 1539.

■ Of particular importance to this Court is the conclusion in *Folendore* that "the plain language of section 506(d) ..." compels allowing a debtor to avoid a lien unsecured or undersecured pursuant to Section 506(a). The language that "such lien is void" is not notably tricky or ambiguous. In determining the scope of a statute, the Court must begin with the statutory language itself. When the terms of the statute are clear, the statutory language is controlling absent exceptional circumstances. *Fidelity Savings & Investment Co. v. New Hope Baptist*, 880 F.2d 1172 (10th Cir.1989).

■ Moreover, and perhaps equally important in this Court's opinion, the use of Section 506(d) allows a debtor to fix with certainty, clarity and finality, the relative rights and interests of the parties at the time of the bankruptcy case. This is a principal feature and purpose of the entire bankruptcy system.

*Time to fix relative rights of debtor and secured creditor are at the time of bankruptcy.* Creditor rights, claims, and interests are, generally, to be fixed at the time of bankruptcy. That is the clear and unqualified intent of the Code and applicable case law. *See, In re Clark*, 91 B.R. 570, 573 (Bankr.D.Colo. 1988); *In re Potenza*, 75 B.R. 17 (Bankr. D.Nev.1987); *Matter of Pearson*, 773 F.2d 751 (6th Cir.1985). There is no logical reason why that objective should be defeated by denial of access to Code tools purposely designed to fix rights as of that date.

**4.** Of particular importance to this Court in refraining from following *In re Triplett, In re Sloan,* and their antecedent, *In re Mahaner,* is this Court's strong rejection of two principal tenets of these decisions. First, Section 506(d) does *not* render Section 722 surplusage, because writing down the claim is manifestly not a redemption of property. Second, avoiding the lien is *not* an unconstitutional taking of property without adequate compensation, because the avoided lien, by definition at the time of filing the bankruptcy case, has no value; if the creditor were to foreclose at the time of bankruptcy,

the creditor would receive no actual proceeds, no value. *See, In re Sloan, supra* at 726; *In re Mahaner, supra* at 309–310. This concept is perhaps best stated in *In re Garnett:* "[I]t is important to remember that the goal of § 506(d) is to place the secured creditor in the same position that he would have been in absent the bankruptcy. If the creditor forecloses on the lien outside the bankruptcy, he would receive the market value of the collateral secured by the lien and a deficiency judgment for the balance." *In re Garnett, supra* at 125; *See also, In re O'Leary, supra* at 883.

*In re Packer*, 101 B.R. 651, 653 (Bankr. D.Colo.1989).[5]

■ The second issue is whether a Chapter 13 debtor is barred from using Section 506(d) by other provisions of Chapter 13, namely Section 1322(b)(2).[6] This Court concludes that a Chapter 13 debtor is entitled to use Section 506(d) to avoid certain liens and is not barred from doing so by any provisions of Chapter 13.

Most cases dealing with a debtor's use of Section 506 are Chapter 7 cases. However, there is some treatment of this question in Chapter 13 cases and, again, the courts are split. Some courts hold that a Chapter 13 debtor may use Section 506(d). *In re Hougland*, 886 F.2d 1182 (9th Cir.1989); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Harris*, 94 B.R. 832 (D.N.J. 1989); *In re Kehm*, 90 B.R. 117 (Bankr.E. D.Pa.1988); *In re Caster*, 77 B.R. 8 (Bankr. E.D.Pa.1987); and *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984).

Other cases hold that a Chapter 13 debtor cannot use Section 506 because it is inconsistent with and superseded by Section 1322(b)(2). *See, In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn.1987); *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont.1987); and *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J. 1986).

■ This Court is persuaded by and adopts the reasoning and decision of *In re Hougland* which provides, essentially, that (1) there is no inconsistency between Sections 506 and 1322(b), (2) the prohibition of Section 1322(b)(2) against modification of "secured claims" applies only to the secured portion of claims which may be bifurcated pursuant to Section 506(a), and (3) a Chapter 13 debtor can modify through a plan the unsecured portion of a claim pursuant to Section 506(d), but cannot modify the secured portion of a claim.

Beyond the reasoning and cases which this Court adopts, one additional factor is of importance in this decision which is not otherwise discussed in the cases. That factor is an important distinction between the rights of the parties under Section 506(d) and Section 1322(b)(2).

Allowing a debtor to use Section 506(d) to avoid the lien on the unsecured portion of the debtor's principal residence does not negate the Section 1322(b)(2) prohibition of modifying the security interest in real property that is the debtor's principal residence. Section 1322(b)(2) will continue to provide protection to the holder of a security interest in a debtor's principal residence that is

5. This Court relies on and here adopts each of the concepts and the case law discussed in *In re Packer* respecting the need and wisdom of fixing relative rights and claims in bankruptcy at the time of the bankruptcy. Particularly important are the following tenets: "1. *Fresh start concept reinforced.* Debtors are interested in and entitled to a fresh start after bankruptcy. Section 522(f), as well as for example Sections 502 and 506, are tools designed to fix the relative rights, interests, and secured claims of creditors and debtors...."; "2. *Lien will survive absent avoidance.* Liens, including judicial liens, if not avoided generally survive after bankruptcy and are enforceable, in an *in rem* action, against a debtor's property pursuant to Section 506(d). *Chandler Bank of Lyons v. Ray*, 804 F.2d 577 (10th Cir.1986).... I read that language in *Chandler* coupled with other important language in that case, [footnote omitted] to conclude that use of avoidance powers available to the debtor ought to be undertaken in bankruptcy to fix the relative rights of a debtor and a secured creditor at the time of bankruptcy, or the lien rights will properly survive the bankruptcy. The burden is on the debtor to properly and timely exercise a debtor's bankruptcy rights and to fix, to establish, the relative rights of debtor and creditor under the Code." ... "5. *Avoidance order establishes certainty and notice of extent of secured creditor rights to property.* As a practical matter, debtors may need procedures, documents and sometimes Court orders to be able to establish, or memorialize, their rights or relative positions. For example, a recorded Court Order which avoids a judicial lien pursuant to Section 522(f), (1) establishes the unenforceable nature of the lien and advises the world of that legal fact, (2) effects a lifting of a cloud or *potential cloud* on the title, and (3) causes the extinguishment of secured creditor rights which would otherwise survive under *Chandler*. ..." *In re Packer, supra* at 652–653.

6. "(b) Subject to subsections (a) and (c) of this section, the plan may— ... (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ..." 11 U.S.C. § 1322(b)(2).

not provided to a holder of a security interest that is not the debtor's principal residence.[7]

IT IS THEREFORE ORDERED that this Debtor may determine all, or portions of, claims to be secured and unsecured pursuant to 11 U.S.C. § 506(a) and may use Section 506(d) to avoid liens which represent claims in excess of the value of the collateral securing such claims.

IT IS FURTHER ORDERED that the lien securing the claim of Colorado National Bank South in the sum of $9,000.00 is hereby avoided pursuant to 11 U.S.C. § 506(d).

IT IS FURTHER ORDERED that the lien of CSB Mortgage Company is avoided in the approximate amount of $17,880.00 pursuant to Section 506(d), but that the balance of the lien securing CSB Mortgage Company's claim in the sum of $27,120.00 is not avoided pursuant to Section 506(d).

IT IS FURTHER ORDERED that Colorado National Bank South's objection to the Debtor's Plan of confirmation on the basis that the Debtor's Plan violates Section 1322(b)(2) is hereby DISMISSED.

IT IS FURTHER ORDERED that the Debtor's Motion to Confirm Chapter 13 Plan is hereby GRANTED.

---

7. To understand this, a brief example of the operation of Section 506(d) as applied to such a security interest is helpful.

A debtor will typically use Section 506 to "cram down" a creditor's security interest in an automobile. For instance, a debtor may, at the time of the filing of the bankruptcy, owe $10,-000.00, payable at a 20% contract interest rate, on that automobile. The debtor may "cram down" the secured portion of the automobile to the actual value of the security interest. For instance, if the actual value of the automobile is $8,000.00, the debtor may "cram down" the value of the security interest to that amount, with the remaining $2,000.00 becoming unsecured debt. This is the same procedure the debtor would use to "write down" the unsecured portion of the debtor's personal residence. However, while the debtor may now modify the rights of the holder of the secured claim on the automobile, Section 1322(b)(2) does not allow the debtor to modify the rights of the holder of a security interest in the debtor's principal residence.

In the case of the automobile, or any other secured property EXCEPT real property that is the debtor's principal residence, the debtor may modify the rights of the holder of the secured claim by "capitalizing" the secured value of the property through the Chapter 13 Plan. In the example of the automobile, the debtor may choose a reasonable capitalization rate, which would almost certainly be lower than the contract rate, and pay that capitalized value through the Chapter 13 Plan. The language of Section 1322(b)(2) would not allow such a modification of the secured portion of the real property that is the debtor's principal residence. The debtor is obligated to continue to pay the contract interest rate on the security interest in real property that is the debtor's principal residence.