**In re Leon FRANKLIN and Maggie Franklin, Debtors.**

**Leon FRANKLIN and Maggie Franklin, Plaintiffs,**

**v.**

**UNION MORTGAGE CO., INC., Defendant.**

**Bankruptcy No. 89–12887.**

**Adv. No. 90–1071.**

United States Bankruptcy Court, N.D. Mississippi.

April 10, 1991.

L. Paul Kossman, Cleveland, Miss., for Leon and Maggie Franklin.

Richard B. Schwartz, Schwartz and Associates, Jackson, Miss., for Union Mortg. Co., Inc.

## OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration before the court is the complaint to modify the third mortgage encumbering the debtors' residence; answer to said complaint having been filed by the defendant, Union Mortgage Co., Inc., hereinafter referred to as Union Mortgage; all factual issues having been stipulated by the parties; the Court having received and reviewed memoranda of law submitted by the parties, the Chapter 13 trustee, and North Mississippi Rural Legal Services; and the court having considered same hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

## II.

### FACTUAL SUMMARY

On November 10, 1988, the debtors entered into a contract with Southern Home Contractors for certain home improvements, including the installation of carpeting and vinyl tile. To finance this transaction, the debtors executed a retail installment contract which called for total payments of $21,664.80, to be paid in 120 monthly installments of $180.54. The amount actually financed was $10,027.08, plus interest at the rate of 17.98% per annum. This contract was secured exclusively by a deed of trust encumbering the debtors' residential real property. The loan was assigned by Southern Home Contractors to Union Mortgage, and then further assigned to Skopbank, a Finnish banking concern. According to information known to this court, Skopbank purchased Union Mortgage, so for purposes of convenience and consistency with the pleadings, the defendant will be referred to as Union Mortgage.

The aforementioned deed of trust is a third lien on the debtors' real property. The first deed of trust is in favor of Farmers Home Administration and secures an indebtedness in the sum of $37,509.00. The second deed of trust is in favor of First National Bank of Bolivar County, Mississippi, and secures an indebtedness in the sum of $8,334.54. The amount currently owed to Union Mortgage is approximately $21,000.00, which includes the remaining principal and all unpaid interest that would be due under the contract.

According to the appraisal of Robert E. Praytor, the debtors' residence has a fair market value of $39,500.00.

The issue which must be decided by the court is whether these Chapter 13 debtors can modify the Union Mortgage claim which is secured exclusively by the debtors' principal residence, since said claim would be totally unsecured under 11 U.S.C. § 506(a).

III.

## CONCLUSIONS OF LAW

(Hereinafter, all Code sections will be considered as Title 11, United States Code, unless specifically noted otherwise.)

█ The first question that must be resolved is whether there is a conflict between the provisions of § 506 and § 1322(b)(2).

Sections 506(a) and (d) are set forth as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title [11 USCS § 553], is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title [11 USCS § 502(b)(5) or (e)]; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title [11 USCS § 501] . . .

Section 1322(b)(2), which applies specifically to Chapter 13 bankruptcy cases provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—. . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; . . .

There have been several Chapter 13 decisions which have held that the general language of § 506 should not override the specific language of § 1322(b)(2). *See, In re Russell,* 93 B.R. 703 (D.N.D.1988); *In re Hynson,* 66 B.R. 246 (Bankr.D.N.J.1986); *In re Hemsing,* 75 B.R. 689 (Bankr.D. Mont.1987); *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987); *In re Brown,* 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Roberts,* 99 B.R. 653 (Bankr.W.D.Pa.1989); *In re Schum,* 112 B.R. 159 (Bankr.N.D.Tex. 1990); *In re Christiansen,* 121 B.R. 63 (Bankr.D.Col.1990). These cases conclude that a claim collateralized exclusively by the debtor's principal residence cannot be modified, even if the claim is actually undersecured or unsecured as contemplated by the definitional language of § 506(a).

Other courts, however, have found no conflict between these two sections and have held that § 506(a) must first be applied to the Chapter 13 creditor's claim to determine whether it should be bifurcated into secured and unsecured components. Thereafter, § 1322(b)(2) would apply only to prevent the modification of the secured portion of the claim. The unsecured deficiency could be modified and treated in a similar manner as other unsecured claims. *See, In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Hart,* 923 F.2d 1410 (10th Cir.1991) (reh'g denied); *In re Harris,* 94 B.R. 832 (D.N.J.1989); *In re Bruce,* 40 B.R. 884 (Bankr.W.D.Va.1984); *In re Caster,* 77 B.R. 8 (Bankr.E.D.Pa.1987); *In re Kehm,* 90 B.R. 117 (Bankr.E.D.Pa.1988); *In re Frost,* 96 B.R. 804 (Bankr.S.D.Oh.1989); *In re Ross,* 107 B.R. 759 (Bankr.W.D.Okl. 1989); *In re Demoff,* 109 B.R. 902 (Bankr. N.D.Ind.1989); and *In re Brouse,* 110 B.R. 539 (Bankr.D.Col.1990). *See also,* 5 Collier on Bankruptcy, Para. 1322.06[1][a] (15th ed. 1989). Many of these cases begin their

analysis with a review of § 103(a) of the Bankruptcy Code which provides, *inter alia,* that Chapters 1, 3, and 5 of Title 11 apply to bankruptcy cases filed under Chapters 7, 11, 12, and 13. An examination of several of these decisions is informative.

The Ninth Circuit in *In re Hougland,* 886 F.2d 1182, concluded that the prohibition against the modification of secured claims in § 1322(b)(2) applied only to the secured portion of the undersecured claim and not to the unsecured portion. In essence, the court said that § 506(a), which applies to all chapters under the Bankruptcy Code, must first be considered before § 1322(b)(2) is applied, to-wit:

> It should first be noted that it is clear that § 506(a) applies to Chapter 13 proceedings. *See,* § 103(a). There is, therefore, no reason to believe that the phrases 'secured claim' and 'unsecured claim' in § 1322(b)(2) have any meaning other than those given to them by § 506(a). It follows that *Lomas' (Lomas and Nettleton Co.)* claim had a 'secured claim' and a 'unsecured claim' component.

*Id.* at 1183–1184.

> Congress quite plainly has provided for the separation of undersecured claims into two components—a secured component and an unsecured component. It has then provided for their treatment in Chapter 13 proceedings. The secured portion has a special protection when residential real estate lending is involved. The unsecured portion does not.

*Id.* at page 1185.

In *Wilson v. Commonwealth Mortgage,* 895 F.2d 123, the Third Circuit ruled that a Chapter 13 plan may divide an undersecured mortgage claim, secured only by the debtors' principal residence, into secured and unsecured portions, followed by a modification of the unsecured portion. The opinion contained a thorough analysis of the legislative history of § 1322, which is set forth hereinbelow, along with the court's conclusion, to-wit:

> Commonwealth argues that the legislative history of section 1322 supports its position. Unfortunately, our review of the history of the provision does not provide us with much insight into the critical question here. The legislative process culminating in the enactment of the Bankruptcy Code of 1978 was stimulated by the 1970 creation by Congress of the Commission on the Bankruptcy Laws of the United States. *Collier* App. 2 at vii. In 1973, the Commission issued recommendations and a draft bill. *See* H.R. Doc. No. 137, 93d Cong., 1st Sess., Pts. I and II (1973), *reprinted in Collier* App. 2 at I. The Commission's report noted that the then-current version of Chapter 13 did not cover any claim secured by real property and thus did not allow a debtor to protect his interest in his home by including his home mortgage in a bankruptcy plan. *Id.* at 13. The Commission recommended that debtors be able to include in their plans proposals for paying debts secured by liens on their residences. *Id.* In a discussion of the rights of secured creditors, the Commission also noted that it was not envisioned that a creditor secured by a lien on a debtor's residence "should be entitled to insist that the plan strictly preserve all of the terms of his original contract if the value of his claim against the property of the debtor is preserved. Insofar as there is a deficiency of the collateral to cover the claim of the secured creditor, he may be and should be treated as a member of the class of unsecured creditors." *Id.* at 166.
>
> Legislation to implement the Commission's recommendations was introduced in both houses of Congress. Neither the House or Senate version was entirely consistent with the Commission's recommendation and neither seemed to focus specifically on the problem of undersecured creditors. *See In re Neal,* 10 B.R. 535, 536 (Bankr.S.D.Ohio 1981). The House version of section 1322(b)(2) was more favorable to debtors than was the Commission's version and provided that the plan could modify the rights of holders of secured or unsecured claims. H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977), *reprinted in Collier* App. 3 at III, 537. It contained no exceptions for liens on the debtor's residence.

Thus, where a creditor holding a lien on a residence was undersecured because the value of the residence was less than the amount of the lien, the House version would permit modification of both the secured and unsecured portions of the creditor's claim. *See* H.R. No. 595, 95th Cong., 2d Sess. 429, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5963, 6384.

The Senate version, on the other hand, included an exception for real estate mortgages and provided that the plan may "modify the rights of holders of secured and unsecured claims (other than claims wholly secured by mortgages on real property) or holders of unsecured claims." S. 2266, 95th Cong., 2d Sess. § 1322(b)(2) (1978), *reprinted in Collier* App. 3 at VII, 573. The exception was apparently included to protect the home mortgage industry. *See Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236, 245 & n. 13 (5th Cir.1984) (in banc); Einbinder, *Curing Mortgage Defaults Under Chapter 13 of the Bankruptcy Code,* in 1982 Ann. Surv. of Bankruptcy Law 493, 495.

The final version of section 1322(b)(2) was contained in a House amendment and was characterized by the legislative leaders as a "compromise agreement." 1978 U.S.Code Cong. & Admin.News at 6481, 6550 (Statements of Rep. Edwards and Sen. DeConcini). This final version limited the exception to home mortgages rather than any real estate mortgage, as would have been provided by the Senate version. Presumably, the compromise was between those for the House version who supported unrestricted modification on behalf of Chapter 13 debtors and those for the Senate version which excepted certain real estate mortgages from modification. The slight difference in language in the exclusionary phrase between the Senate's version ("wholly secured") and that ultimately adopted ("secured only") does not appear to have been given any significance. Thus, although it is clear that the anti-modification provision of the Act was inserted on behalf of the home mortgage industry, the fact that the provision itself was a compromise suggests that the residential mortgage providers did not emerge with all the protection they may have sought.

Commonwealth also argues that as a matter of statutory construction, the specific exclusion of section 1322(b) controls the general provisions of section 506(a). This would, in effect, require that we ignore section 506(a) in Chapter 13 proceedings, which is inconsistent with our earlier precedent that holds that section is fully applicable to Chapter 13. *See In re Lewis,* 875 F.2d [53] at 55 [ (3d Cir. 1989) ]. On the other hand, constructing section 1322(b)(2) to allow bifurcation of secured and unsecured portions of a claim and to allow modification of the unsecured portion makes it consistent with section 506, a section of general applicability. Nor does reading section 1322(b)(2) in this manner leave the section without a *raison d'etre.* Section 1322(b)(2) continues to prevent modification of the rights of holders of a secured claim secured only by a real estate interest in the debtor's home, rights that in the absence of the exclusionary language of the section could be modified under Chapter 13.

For these reasons, we will adopt as well-reasoned the conclusion of the district court that section 1322(b)(2) does not preclude modification of the unsecured portion of an undersecured mortgage debt.

*Id.* at 127–129.

A similar legislative analysis and conclusion was recently reached in *In re Goins,* 119 B.R. 156 (Bankr.N.D.Ill.1990). Judge Robert Ginsberg offered the following:

The Bankruptcy Code consistently treats the holder of an undersecured creditor (sic) as the holder of two entirely separate claims, one secured, one unsecured. Thus, while unavoided lien claims survive a Chapter 7 discharge, they survive only to the extent of the lien. If a creditor is owed $100,000 and has collateral worth only $25,000, its $25,000 secured claim survives the Chapter 7 discharge (assuming the lien is not avoided).

The $75,000 unsecured claim is discharged. 11 U.S.C. § 506(d); *Matter of Lindsey*, 823 F.2d 189 (7th Cir.1987).

By the same token, in Chapter 11 and 12, or 13 this hypothetical lien creditor has a $25,000 secured claim and a $75,000 unsecured claim for plan purposes. To treat the two claims as one fully secured claim for plan and distribution purposes would discriminate unfairly against the other unsecured creditors and prevent confirmation of the plan. *See, e.g.*, 11 U.S.C. §§ 1129(b)(1), 1222(b)(1) and 1322(b)(1). When the Bankruptcy Code alters this consistent pattern of bifurcation of undersecured claims into two separate claims, it does so very clearly. *See, e.g.*, 11 U.S.C. § 1111(b). There is nothing in § 1322(b)(2) indicating a clear deviation from the normal statutory pattern and suggesting why Diamond, as an unsecured creditor, should get a significant advantage over other nonpriority unsecured creditors.

Finally, the court must note that while decisions from Circuits other than the 7th Circuit are not binding on it, it has given great weight in concluding that the debtors may bifurcate Diamond's claim to the fact that two Circuits have reached the same conclusion. *See Wilson v. Commonwealth Mort. Corp.*, 895 F.2d 123 (3rd Cir.1990); *In re Hougland*, 886 F.2d 1182 (9th Cir.1989). The logic of those decisions is persuasive.

*Id.* at page 162.

In *In re Hart*, 923 F.2d 1410, the Tenth Circuit concluded that § 1322(b)(2) did not prohibit the bifurcation of a Chapter 13 undersecured claim, which was secured exclusively by the debtors' principal residence, because the claim was in reality two claims, a secured claim and an unsecured claim. The prohibition against modifying a claim secured by the debtors' residence applied only to the secured claim. The court went on to say that § 1322(b)(2) did not prohibit bifurcation because bifurcation was a recognition, not a modification, of the secured claim.

In *In re Brouse*, 110 B.R. 539, the bankruptcy court held that under § 506(d), a Chapter 13 debtor may partially or completely avoid liens, secured by her principal place of residence, which exceed its value. The debtor, who filed a petition for relief under Chapter 13, owned a home valued at $27,120.00. The home was security for two debts: a $45,000.00 claim secured by a first deed of trust and a $9,000.00 claim secured by a second lien. The debtor's plan called for the second lien to be completely avoided and for the first lien to be partially avoided to the extent that it exceeded the value of the house. The creditors objected to confirmation, arguing that the plan was violative of § 1322(b)(2). The debtor then initiated an adversary proceeding to avoid or otherwise fix the validity, priority, and extent of the two liens. The debtor argued that she was entitled to avoid, in whole or in part, these liens under the authority of § 506(d). The court permitted the partial avoidance of the first lien and the complete avoidance of the second lien. The court noted that § 506(d) is unambiguous in that it states simply that unsecured liens under § 506(a) are "void."

## IV.

At least since the enactment of the Bankruptcy Code, debtors have been encouraged to attempt to repay their debts through Chapter 13 plans, rather than liquidating in Chapter 7. Many courts, however, in Chapter 7 cases, routinely permit debtors to avoid liens which are undersecured or unsecured because of an absence of collateral value. A review of some of these decisions is helpful in resolving the Chapter 13 issue presently before the court.

In *In re Lindsey*, 823 F.2d 189 (7th Cir. 1987), the Chapter 7 debtors owned real estate that was subject to a first mortgage of $209,000.00, held by the Federal Land Bank, and a second mortgage of $341,000.00, held by the Farmers Home Administration. The debtors filed a complaint requesting the bankruptcy court to "strip down" the mortgages to the current value of the property, which was found by the court to be $233,000.00. The Seventh Circuit stated:

So the liens were stripped down. But once the strip-downs were complete and the secured claims allowed in their stripped-down amount, and given that only the two stripped down creditors were in the picture (for they were senior, and there were not enough assets for junior creditors to get anything), the only thing that remained to do in the bankruptcy proceeding was to discharge the debtors and let the creditors foreclose their stripped down liens, subject to whatever rights of redemption the debtors might have, under state law, in the foreclosure proceeding.

*Id.* at 191.

Notably, the Seventh Circuit did not permit the debtors to reamortize the "stripped down" debt.

In *Matter of Folendore*, 862 F.2d 1537 (11th Cir.1989), another Chapter 7 case, the Small Business Administration had a perfected third security interest in certain real and personal property owned by the debtors. The SBA lien was junior to those of the Federal Land Bank and the Central Georgia Production Credit Association. The combined claims of the first two liens exceeded the value of the property. Thus, pursuant to § 506(a), SBA held an unsecured claim. The debtors filed a complaint seeking to avoid the SBA lien in its entirety under § 506(d). The Eleventh Circuit concluded as follows:

Section 506(d) does not really "redeem" the property of the debtor. The Folendores' only interest in the property is possession—the two banks effectively own the property. While it is true that the Folendores might in the future pay off the mortgages on the property, at this moment the banks could foreclose on the property and cut out the SBA and the Folendores completely. The SBA admits the banks' power to foreclose and annihilate the SBA lien. The SBA presumably hopes that sometime in the future the Folendores will have equity in the property which could be attached by the SBA. The SBA's position is self-defeating. It simply provides an incentive for the Folendores to abandon the property. There is no reason the Folendores should remain on a piece of property on which the SBA can attach any equity they manage to generate. They, and any other post-discharge possessors of real property, would be far better off finding unencumbered property upon which to start their financial life afresh. This, of course, would leave a creditor like the SBA with nothing, which is exactly what section 506(d) on its face says it has.

The whole point of bankruptcy is to provide a debtor with a fresh start. Section 506 allows the debtor the option to begin anew on its former property. Section 506 does not give a debtor its property back as some sort of windfall. It simply permits the debtor to eventually repurchase an equity interest in it, something the SBA admits it has the right to do on any other piece of land. (Footnotes omitted).

*Id.* at 1540.

The logic of *Lindsey* and *Folendore* has been followed in the United States Bankruptcy Court for the Southern District of Mississippi in a case styled *Matter of Lott*, Case No. 8501242JC, Adv. No. 870070JC, September 6, 1989, where Judge Edward Ellington held that a Chapter 7 debtor could use § 506(d) to extinguish or avoid a consensual lien on real property to the extent that the lien exceeded the value of the property.

Judge Edward R. Gaines, United States Bankruptcy Court for the Southern District of Mississippi, also made a similar determination in a case styled *In re Donnie Vivian Freeman Stringer*, Bankruptcy Case No. 8807309HEG, December 5, 1988. There, the Farmers Home Administration held an undersecured claim which substantially exceeded the value of the debtor's homestead property. Judge Gaines found the property to be valued at $33,500.00, and allowed the debtor to redeem this property by paying its value to Farmers Home Administration within 90 days. The unsecured balance of the indebtedness was discharged.

Judge William Houston Brown, United States Bankruptcy Court for the Western

District of Tennessee, recently rendered a very comprehensive decision on this issue in a Chapter 7 case styled *In re Zobenica*, 109 B.R. 814 (Bankr.W.D.Tenn.1990). In that case, Banc Boston Mortgage Company held a first mortgage encumbering the debtors' real property which secured its claim in the sum of $46,607.37. The debtors had also obtained a loan in the sum of $70,000.00 from the Bank of Bartlett which had been guaranteed by the Small Business Administration. This loan was secured by a second mortgage encumbering the real property. Judge Brown found that the value of the property was $56,500.00, and, relying on § 506(d), directed the debtors to pay the Bank of Bartlett and the Small Business Administration the difference between the amount owed to Banc Boston Mortgage Company and the value of the property. This payment, totaling $9,892.63, and representing the allowed amount of the second mortgage secured claim, was to be made within 30 days of the date of entry of the court's order.

Other Chapter 7 cases concluding that § 506(d) may be used to avoid the unsecured portion of a lien, deemed unsecured by the effect of § 506(a), are the following: *Gaglia v. First Federal Sav. & Loan Assoc.*, 889 F.2d 1304 (3rd Cir.1989); *In re Garnett*, 88 B.R. 123 (Bankr.W.D.Ky.1988), *aff'd*, 99 B.R. 757 (D.W.D.Ky.1989); *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981); *In re Brace*, 33 B.R. 91 (Bankr.S.D.Ohio W.D.1983); *In re Gibbs*, 44 B.R. 475 (Bankr.D.Minn.1984); *In re Lyons*, 46 B.R. 604 (Bankr.N.D.Ill.1985); *In re Cleveringa*, 52 B.R. 56 (Bankr.N.D.Iowa 1985); *In re Worrell*, 67 B.R. 16 (C.D.Ill.1986); *In re O'Leary*, 75 B.R. 881 (Bankr.D.Or.1987); *In re Zlogar*, 101 B.R. 1 (Bankr.N.D.Ill. 1989); *In re Hunter*, 101 B.R. 294 (Bankr. S.D.Ala.1989).

In *In re Zlogar*, 101 B.R. 1, a Chapter 7 case following the majority view and permitting the use of § 506(d) to avoid liens exceeding the value of the debtor's residence, even though the residence had been abandoned by the trustee, Judge David H. Coar listed several cases which followed the minority viewpoint and categorized them according to their approaches or rationales, to-wit:

1) § 506 is not applicable to property unadministered or abandoned by the trustee: *See, In re Dewsnup*, 87 B.R. 676 (Bankr.D.Utah 1988), *aff'd*, 908 F.2d 588, *cert. granted*, —— U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991); *In re Maitland*, 61 B.R. 130 (Bankr.E. D.Va.1986); *In re Harvey*, 3 B.R. 608 (Bankr.M.D.Fla.1980).

2) Real property is excluded from § 722, the statute permitting the redemption of personal property, and § 506(a) must be read and applied in a consistent manner with § 722: *See, In re Smith*, 79 B.R. 650 (Bankr.D.Md.1987); *In re Cordes*, 37 B.R. 582 (Bankr.C.D. Cal.1984); *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983); *In re Harvey*, 3 B.R. 608 (Bankr.M.D.Fla.1980).

3) Avoidance of liens under § 506 is an unconstitutional taking of property: *See, In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y.1983).

Judge Coar concluded that the minority approaches were not well reasoned by stating:

> While the rationale supporting the minority view suggests that there are persuasive arguments on both sides of this issue, the Seventh Circuit Court of Appeals is among the majority. *See, In re Lindsey*, 832 F.2d 189. Even if this Court were not bound by *Lindsey*, the Court believes that the majority view is consistent with the plain language of § 506, giving the intended effect to the respective rights of debtors and secured creditors, both within and outside of bankruptcy, and is therefore the better reasoned approach.

101 B.R. 1 at page 5.

Other Chapter 7 cases which adhere to the minority view are *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okl.1989) and *In re Mammoser*, 115 B.R. 758 (Bankr.W.D.N.Y.1990). *Shrum* adopted the *Dewsnup*, 87 B.R. 676, philosophy to the effect that the debtors could not avoid liens on their property since the property had been abandoned by the trustee, indicating that § 506(a) can be ap-

plied only to property in which the estate still has an interest, not to property which has been abandoned. *Mammoser* simply held that § 506(d) is not a "stand-alone" avoiding power.

█ To this court, the *Dewsnup* rationale results in an unnecessary emasculation of § 506(d). Granted, § 506(a) does mention the "estate's interest in such property," when it discusses what constitutes an allowed secured claim. However, in a Chapter 7 context, the first thing a competent trustee will do is abandon overencumbered property. This property will obviously not benefit the trustee and in some instances could actually become a liability. *See, In re Dinh,* 80 B.R. 819 (Bankr.S.D. Miss.1987). The singular act of abandonment does not release property to the secured creditor. It releases the trustee's interest to the debtor since the automatic stay still remains operative. To take the position that the trustee's abandonment negates the debtor's ability to use the lien avoidance authority granted by § 506(d) is a classic example of placing form over substance. Such an approach creates a race between the debtor and the undersecured creditor, not to the courthouse, but to the trustee.... the creditor requesting the trustee to quickly abandon the overencumbered property so that the debtor cannot avoid the unsecured lien, and the debtor requesting the trustee to defer abandonment until the debtor can initiate and conclude a § 506(d) adversary proceeding. Such a race is nonsense and totally contrary to the "fresh start" purpose of the Bankruptcy Code.

For a comprehensive review of § 506(d) as applied to Chapter 7 cases, *see* "§ 506(d) —A Chapter 7 Debtor's Secret Weapon?", *Norton Bankruptcy Law Adviser,* Callagan and Company, 1990—No. 10, authored by Judge Paul B. Lindsey, coincidentally the author of *In re Shrum.*

In order to bring the issue before the court into perspective, one must hypothetically apply the Chapter 7 *majority* viewpoint, which allows the use of § 506(d) to avoid undersecured or unsecured liens, to the present Chapter 13 factual scenario.

As can be easily seen, if Chapter 13 debtors are prohibited, because of the language of § 1322(b)(2), from modifying undersecured and even unsecured claims, then § 1322(b)(2) penalizes those debtors who file under Chapter 13, compared to those debtors who liquidate through Chapter 7. This result is simply not in keeping with the intent of the Bankruptcy Code.

It is obvious that the claim of Union Mortgage in the instant proceeding was never secured to any extent whatsoever. It is inequitable, under these factual circumstances, to treat the claim of Union Mortgage as if it were fully secured. This is especially true when one considers that the debtors herein, applying the Chapter 7 majority viewpoint, could have filed a Chapter 7 bankruptcy case initially and avoided the Union Mortgage lien in its entirety pursuant to § 506(d). Alternatively, the debtors could now convert their Chapter 13 case to a case under Chapter 7, and achieve the same results. To say that similar relief should not be available for the debtors in their existing Chapter 13 case is illogical.

### V.

This court is well aware of the comments set forth in the Fifth Circuit decision, *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984). The opinion speaks at length on the prohibition found in § 1322(b)(2) against the modification of a claim secured by the debtor's principal residence. However, the central issue in *Grubbs* did not involve the question of whether § 506(a) could be utilized in a Chapter 13 bankruptcy to bifurcate an undersecured claim, collateralized exclusively by a debtor's principal residence, into secured and unsecured components, prior to the application of § 1322(b)(2). In fact, at the time of the *Grubbs* decision, no court had ever addressed this issue "head-on." *Grubbs* is significant because it holds that a claim, secured by a lien encumbering the debtor's principal residence, which had been accelerated to maturity because of a pre-petition default, could be deaccelerated by the filing of a Chapter 13 bankruptcy

petition and paid through the Chapter 13 plan. This was permitted even though the final payment on the indebtedness came due, under its nonaccelerated terms, within the life of the proposed plan. The very heart of the decision is focused on the conclusion by the Fifth Circuit that the curing of the pre-petition default and the resulting deacceleration of the indebtedness do not amount to an impermissible modification of the secured claim in violation of § 1322(b)(2).

The question of what constitutes a legitimate allowed secured claim, i.e., one that is supported by collateral value, for § 1322(b)(2) purposes, was simply not addressed in *Grubbs*. The application of the "bifurcation school of thought" to § 1322(b)(2) did not seriously begin to emerge until almost five years later when the Ninth Circuit decided *Hougland*, 886 F.2d 1182. Therefore, this court does not think that its present opinion conflicts with *Grubbs*.

### VI.

 Once a court has permitted the bifurcation of a claim secured exclusively by a Chapter 13 debtor's residence, the next question that must be answered is how must the secured portion of the claim be treated in the Chapter 13 plan. Two cases, known to this court, have spoken to this issue.

In *In re Hayes*, 111 B.R. 924 (Bankr.D. Or.1990), Judge Henry L. Hess held that although a Chapter 13 plan may bifurcate an undersecured claim which is secured exclusively by the debtors' principal residence into secured and unsecured portions, the plan may not thereafter alter the amount of the monthly payments or reduce the contractual interest rate as to the secured portion. As such, once the allowed amount of the secured claim is established, it cannot be modified in contravention of the specific language of § 1322(b)(2). Judge Hess also would not permit the debtors to allocate *postpetition* arrearages to the unsecured portion of the claim. He thus required the debtors to cure all of the

defaults that had accrued subsequent to the case being filed.

In *In re Honett*, 116 B.R. 495 (Bankr.E. D.Tx.1990), Judge Donald R. Sharp held that a Chapter 13 plan may bifurcate an undersecured mortgage lien into an allowed secured claim and an allowed unsecured claim. He then concluded that all of the relevant payment terms of the mortgage instrument, except the necessary shortening of the maturity date, must remain intact. Judge Sharp held that the mortgage arrearages, which had accrued *pre-petition*, could not be treated as a part of the unsecured claim. Relying in part on the provisions of § 1322(b)(5), he directed the debtors to cure these arrearages through the Chapter 13 plan. For reference purposes, § 1322(b)(5) is set forth as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> \* \* \* \* \* \*
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

In the NACTT Quarterly, an official publication of the National Association of Chapter Thirteen Trustees, Volume IV, No. 2, January, 1991, Attorney Lyle Nelson offered an excellent example of dealing with arrearages in his article entitled "11 U.S.C. § 1322(b)(2); The 'Modification' That Never Was—Judicial Legislation In the 1980's." He posed the following hypothetical factual pattern:

> Debtor A and B take out identical home notes and mortgages on January 1, 1980. Assume on January 1, 1990, both file for Chapter 13 relief. Debtor A has failed to make a payment for one year. Debtor B is current at the time of filing. Assume that the principal amount on both debts is $70,000.00 and the value of the real estate securing the obligations is $60,000.00.

Nelson indicated that if bifurcation is permissible, then debtors A and B would be allowed to eliminate $10,000.00 from their principal debt obligations, but neither could change the amount of the monthly mortgage payments, nor the contractual interest rate. He stated that to place debtor A and debtor B on equal footing, that debtor A should also be required to cure his pre-petition arrearages within a reasonable time. Nelson also said that the debtor should not be permitted to ignore the arrearages by accelerating the indebtedness and paying it in full during the life of the Chapter 13 plan, because, acceleration of the indebtedness through increased monthly payments, would likely remove disposable income which would otherwise be available for payment to unsecured creditors. He concluded that such an acceleration of the allowed secured claim would also violate the anti-modification provision of § 1322(b)(2).

This court basically agrees with Nelson's comments, but would add that the curing of the pre-petition arrearages presumes that the regular monthly mortgage payments will continue beyond the life of the plan, bringing § 1322(b)(5) into play. In the extremely unusual event that the debtors could fully pay the bifurcated secured component at the identical installment payment rate, with no change in the rate of interest, within the life of the plan, i.e., no modification whatsoever of the § 506(a) *allowed* secured claim, the curing of the pre-petition arrearages would not be required because § 1322(b)(5) would not be applicable.

Under these circumstances, allowing the bifurcation of the undersecured claim, secured solely by the debtors' residence, and requiring the payment of the allowed secured claim to be made in keeping with the terms of the mortgage instrument, should not adversely impact the undersecured creditor to any significant extent. In the event that the debtors cannot make the payments in a timely fashion, the bankruptcy case will likely be converted to Chapter 7 or dismissed. Should dismissal occur, any lien avoidance permitted will effective-

ly be vacated as set forth in § 349(b) which reads as follows:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title [11 USCS § 742]—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title [11 USCS § 543];

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title [11 USCS § 522, 544, 547, 548, 549, or 724(a) ], or preserved under section 510(c)(2), 522(i)(2), or 551 of this title [11 USCS § 510(c)(2), 522(i)(2), or 551]; and

(C) any lien voided under section 506(d) of this title [11 USCS § 506(d) ];

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title [11 USCS § 522(i)(1), 542, 550, or 553]; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title [11 USCS § 101 et seq.].

## VII.

In summary, this court offers the following conclusions:

1. Section 506(a) applies to Chapter 13 bankruptcy cases to the effect that undersecured claims, secured exclusively by the debtors' principal residence, may be bifurcated into secured and unsecured components.

2. The secured component of the bifurcated claim may not be modified in contravention of § 1322(b)(2). In this context, the Chapter 13 plan may not modify the regular monthly installment payments as required by the mortgage instrument, nor may the plan modify the contractual interest rate. If the stream of payments necessary to satisfy the allowed secured debt exceeds the life of the plan, the plan must provide for the curing of all existing arrearages, consistent with § 1322(b)(5).

3. The maturity date of the mortgage obligation will be effectively reduced to a point in time that will coincide with the conclusion of the payment of the allowed secured claim at the regular monthly installment rate set forth in the mortgage instrument.

4. The unsecured component of the bifurcated claim must be treated in a similar manner as other unsecured claims, consistent with § 1322(b)(1).

5. Any actions to avoid the underlying lien pursuant to § 506(d) must be initiated by an adversary complaint as contemplated by Rule 7001, Rules of Bankruptcy Procedure.

### VIII.

In the matter presently before this court, the lien of Union Mortgage is found to be totally unsecured. As such, this lien will be avoided in its entirety pursuant to § 506(d), and the claim of Union Mortgage will be allowed only as an unsecured claim.

A separate order will be entered consistent with this opinion.