**In re Jimmie and Cynthia BELLAMY, Debtors.**

**FEDERAL HOME LOAN MORTGAGE CORP., Assignee of Comfed Mortgage Co., Inc., Appellant,**

v.

**Jimmie and Cynthia BELLAMY, Appellees.**

Civ. No. 5–91–00052 (WWE).

United States District Court, D. Connecticut.

June 26, 1991.

Carla E. Craig, Hertzog, Calamarti & Gleason, New York City, Dean S. Cooper, Associate Gen. Counsel, Federal Home Loan Mortg. Corp., Reston, Va. and Richard A. Roberts, Fazzone, Nuzzo & Baillie, P.C., Cheshire, Conn., for appellant.

Norton P. Feinstein, Norwalk, Conn. and Gilbert L. Rosenbaum, Hartford, Conn., trustees.

Ira B. Charmoy, Charmoy & Nugent, Bridgeport, Conn., for appellees.

### RULING ON APPEAL FROM AN ORDER OF THE BANKRUPTCY COURT

EGINTON, District Judge.

#### I. *Standard of Appellate Review*

The issue on appeal concerns the Bankruptcy Court's statutory interpretation of 11 U.S.C. § 1322 and 11 U.S.C. § 506. Under Bankruptcy Rule 8013, the reviewing court must make an independent evaluation of the question of law. Therefore, the applicable standard of appellate review is *de novo. Truck Drivers Local 807 v. Carey Transportation Inc.*, 816 F.2d 82, 88 (2d Cir.1987).

#### II. *Background*

The following facts are not in dispute. On May 24, 1987, debtors Jimmie and Cynthia Bellamy purchased their primary residence located at 135 Clover Hill Avenue, Bridgeport, Connecticut. Comfed Mortgage Company financed the purchase, secured only by a first mortgage. Subsequently creditor Federal Home Loan Mortgage Corporation purchased Comfed's lien and currently holds a first perfected security interest in the real property.

On April 18, 1990, debtors filed for relief under Chapter 13 of the Bankruptcy Code. The mortgage was then approximately $13,000 in arrears. On April 25, 1990, debtors initiated an adversary proceeding to "cram down" to $127,500 the creditor's secured lien of $151,340.85. The "cram down" figure represented the fair market value of the residence, minus disposal costs of $10,200. At the conclusion of the adversary proceeding the Bankruptcy Court voided and discharged the creditor's lien to the extent that it exceeded the fair market value of the residence. In addition, the Bankruptcy Court found that disposal costs could not be deducted from the fair market value of the residence.

#### III. *Discussion*

The sole issue on appeal is whether two bankruptcy code sections:

11 U.S.C. § 1322 and 11 U.S.C. § 506 may be reconciled.

11 U.S.C. § 1322 establishes the contents of a Chapter 13 debtor's plan for rehabilitation. Section 1322(b) states in relevant part:

> [T]he plan may ...
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C. § 506 defines and governs the treatment of secured claims. Section 506 states in relevant part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.....
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

It is stipulated by the parties that under § 1322(b) the creditor has a secured claim in the primary residence, which claim is protected against modification. The dispositive issue is the extent to which the creditor's claim is protected from modification. The debtors contend that under § 506 the creditor's undersecured mortgage can be bifurcated into two separate claims: (1) a secured claim for the fair market value of the residence, and (2) an unsecured claim beyond the fair market value of the residence. Section 506(d) would void and discharge the unsecured portion of the lien.

The creditor argues that under § 1322 his entire undersecured claim, secured only by a security interest in the principal residence of the debtor, is protected from modification. The creditor also contends that § 506 cannot be used to bifurcate the undersecured claim, because § 1322 and § 506 are incompatible code sections and should not be read together. Instead, statutory construction and legislative history support the position that § 1322 supercedes § 506 and, under the original mortgage terms, protects the home mortgage lender from modification of the entire undersecured claim.

■ This is a case of first impression in the 2nd Circuit, the only circuit which has not decided the issue. The courts of the 1st, 8th, and 11th circuits find bifurcation to be unacceptable. *In re Mitchell,* 125 B.R. 5 (Bankr.D.N.H.1991); *In re Chavez,* 117 B.R. 733 (Bankr.S.D.Fla.1990); *In re Sauber,* 115 B.R. 197 (Bankr.D.Minn.1990); *Matter of Kaczmarczyk,* 107 B.R. 200 (Bankr.D.Neb.1989); *In re Russell,* 93 B.R. 703 (D.N.D.1988); *In re Catlin,* 81 B.R. 522 (Bankr.D.Minn.1987).

The majority of courts, including the 3rd, 4th, 5th, 6th, 7th, 9th, 10th and 11th circuits, find bifurcation appropriate. *In re Hart,* 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortg. Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Franklin,* 126 B.R. 702 (Bankr.N.D.Miss.1991); *In re Goins,* 119 B.R. 156 (Bankr.N.D.Ill. 1990); *In re McNair,* 115 B.R. 520 (Bankr. E.D.Va.1990); *In re Demoff,* 109 B.R. 902 (Bankr.N.D.Ind.1989); *In re Frost,* 96 B.R. 804 (Bankr.S.D.Ohio 1989). This court supports bifurcation, because the rationale of alternative interpretation is unpersuasive and leaves uncertain the definition of an unsecured creditor.

A. *Statutory Construction*

The starting point of statutory interpretation is the language of the statute. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The plain meaning of the language provides the most reliable source of interpreting the meaning of the statute. *Watt v.*

*Alaska,* 451 U.S. 259, 266, n. 9, 101 S.Ct. 1673, 1678, n. 9, 68 L.Ed.2d 80 (1981). On the face of § 1322, the holder of a secured claim, "secured only by a security interest in real property that is the debtor's principal residence," is protected against modification. The ambiguity, however, is the reading of the clause "other than." Section 1322's use of the phrase "other than" is in reference to "holders of secured claims," and therefore, only the secured portion of the claim is protected from modification.

The secured claim in § 1322 as defined in § 506 "is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). There are no explicit exceptions to this provision, and this court will not imply one. *United States v. Goldbaum,* 879 F.2d 811, 813 (10th Cir.1989).

■ The creditor argues that § 1322 and § 506 are in conflict and therefore specific provisions supercede general ones. This court disagrees. The general rule of statutory interpretation provides that statutory provisions should first be construed together whenever possible to avoid conflict. *Aeron Marine Shipping Co. v. United States,* 695 F.2d 567, 576 (D.C.Cir.1982); *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1186 (D.C.Cir.1982). Therefore, when the provisions are reconciled, the "secured claim" of § 1322 is properly defined in § 506.

B. *Legislative History*

The legislative history of § 1322 is conflicting and unclear as to the dispositive issue. The legislative process of the 1978 Bankruptcy Code began with recommendations of the Commission on Bankruptcy Law of the United States and proposed legislation by both Houses of Congress. With respect to Chapter 13, the Commission recommended that a debtor could retain his home through a Chapter 13 plan, and that the creditor could not insist on the original terms of the contract if his claim against the property was preserved. In

addition, the Commission defined the secured creditor as "protected to the extent of the value of the collateral" and any deficiency of collateral to be treated as unsecured. H.R.Doc. No. 93–137, 93rd Congress, 1st Sess. (1978), reprinted in *Collier on Bankruptcy*, App. 2, pt. 1, at 166 (15th ed.1990).

The Senate's pro-creditor version of § 1322(b)(2) provided that secured claims could be modified "other than [those] claims wholly secured by mortgages on real property." S. 2266, 95th Cong., 2d Sess. (1978), reprinted in *Collier*, App. 3, pt. VII, at 573–73. The House's pro-debtor version of § 1322(b)(2) provided that the rights of holders of any secured or unsecured claims could be modified without exception. H.R. No. 8200, 95th Cong., 1st Sess. (1977), reprinted in *Collier*, App. 3, pt. 111, at 537. The final compromise agreement changed the Senate's language from "wholly" to "only" and included the House's principal residence exception. 124 Cong.Rec. H 1106–07 (Sept. 28, 1978); 124 Cong.Rec. S17423 (Oct. 6, 1978). There is no legislative history of the final compromise version of section 1322(2)(b) which answers the bifurcation issue.

The creditor contends that the legislative history defines "only" as: if any of the claim is secured by the primary residence, then the entire claim is protected. This court declines to support an interpretation that would effectively give the creditor more protection under the statute than the original Senate version.

## C. *Fresh Start Policy*

The codified public policy of Chapter 13 supports the debtor's interpretation. The Congressional intent of Chapter 13 was to enable an individual, under court supervision, to reorganize and repay his debts over a certain period of time under a structured rehabilitation plan. Instead of opting for liquidation under Chapter 7, a debtor may retain his assets by repaying his creditors under Chapter 13. In this manner a debtor may save his home. *Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236, 239 (5th Cir.1984).

In the present case, the debtors filed plans to cure their mortgage default by restating the mortgage to the value of the residence. *In re Bellamy*, 126 B.R. 134 (Bankr.D.Conn.1991). The creditor's contention that the entire undersecured mortgage lien be restated to the terms of the original contract after reorganization of the debt, is in opposition to the fresh start policy. *In re Wonder Corp. of America*, 72 B.R. 580, 588 (Bankr.D.Conn.1987), *aff'd*, 82 B.R. 186 (D.Conn.1988). Under § 506(d) the debtor can avoid any claims, in whole or part, which exceed the value of the collateral. Section 506(d) provides the debtor with a clear and final determination of the interests of the parties at the time of bankruptcy. This is one of the ultimate goals of the Bankruptcy Code. *In re Brouse*, 110 B.R. 539, 542 (Bankr.D.Colo. 1990).

The creditor asks this court to favor an interpretation which puts the creditor in a better position than if the debtor had not filed for relief under Chapter 13. This court declines to support the creditor's position. The advantage for the creditor under Chapter 13 is obvious: the creditor's losses are less under Chapter 13 than under Chapter 7. The creditor also argues that "cram-down" is at odds with the statutory scheme of Chapter 13 because it fails to protect the residential mortgage lenders, and puts them at a greater disadvantage than other secured creditors. In fact, the creditor is actually in a better position than other secured creditors whose claims are not secured by a principal residence. The creditor's secured interest in the principal residence is protected from modification of the original contract terms by § 1322(b)(2). The debtor is obligated to continue to pay the contract interest rate on the security interest in real property which is the debtor's principal residence. *In re Brouse*, 110 B.R. at 544, n. 7. (Bankr.D.Colo.1990).

## IV. *Conclusion*

For the reasons stated above, the order of the Bankruptcy Court is hereby AFFIRMED.